In re ESTATE OF Clara Elaine ANDERSON, Decedent, Glenda Merten, Appellant,

v.

Arnold R. DAY, Jr., Administrator Ad Litem, Respondent.

No. WD 50947.

Missouri Court of Appeals,
Western District.

Feb. 27, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 2, 1996.

Application to Transfer Denied
May 28, 1996.

Dennis G. Muller, Kansas City, for appellant.

Arnold R. Day, Kansas City, pro se.

Before SMART, P.J., and LOWENSTEIN and BERREY, JJ.

LOWENSTEIN, Judge.

This case is an appeal from the grant of summary judgment against appellant's petition alleging undue influence which induced the decedent to revoke appellant's joint tenancy in some bank accounts.

Glenda Merten (Petitioner) filed a petition in a discovery of assets action alleging that she retained an ownership interest in a certificate of deposit (CD) account that was held in the sole name of her cousin, Clara Anderson (Decedent), at the time of her death. Decedent created the CD in question by taking the money from three joint CD accounts in the names of Petitioner and Decedent and redepositing it into a single CD account in Decedent's sole name. Petitioner claimed ownership of the money in the CD because the money originally had been held jointly and upon Decedent's death should have gone to her as the survivor. Petitioner alleged that Decedent removed her name from the jointly held CD's because of undue influence by Erica Palmer (Neighbor), Decedent's next-door neighbor. The trial court dismissed Petitioner's petition and granted summary judgment because 1) Petitioner could not prove all of the elements of undue influence, and 2) Decedent's mental incapaci-

ty to change the accounts was not pled as a separate count and could not defeat the motion for summary judgment.

The facts are as follows: Decedent and Neighbor first met when Neighbor moved in next door in 1988. Decedent lived alone, her closest relatives being Petitioner and two other cousins. Petitioner had lived with Decedent as a young girl, and according to Petitioner's affidavit, "maintained a close relationship thereafter."

The three joint CD's used to create the CD at issue were three accounts of approximately $28,000 each in the joint names of Decedent and Petitioner or the survivor. Decedent created the CD's; Petitioner was a noncontributing joint tenant who knew nothing of the CD's until the events leading to this action occurred.

On July 31, 1990, Decedent had a heart attack and was hospitalized. Besides the heart problems, she was diagnosed with senile dementia. Neighbor notified Petitioner and Decedent's two other relatives of her heart attack. Petitioner and one other relative came to visit Decedent in the hospital on August 7, 1990.

The week Decedent was in the hospital, Neighbor found "two or three" years of bills for unpaid real estate taxes and several uncashed income checks in Decedent's home. Without consulting Decedent's relatives, Neighbor brought an attorney to the hospital to talk to Decedent about her "affairs."

Upon Decedent's release from the hospital, Neighbor took Decedent to a notary, where she signed a form granting Neighbor durable power of attorney. Neighbor also invited Decedent to live with her. Using the power of attorney, Neighbor wrote checks on several of Decedent's accounts for herself and for groceries and household items for her family. Neighbor also "experienced opposition" in writing checks to businesses using the power of attorney, so she deposited Decedent's money in her own personal account and wrote checks from there. In November 1990, Neighbor and her family purchased a home with $20,000 of Decedent's funds and moved there with Decedent. Using Decedent's money, Neighbor furnished the home, bought a car, and spent about $1,000 per month on personal expenses.

In January 1991, Petitioner made an unannounced visit to Decedent, at which Neighbor "expressed displeasure." From September 1990 to October 1991, Neighbor used about $7,500 of Decedent's funds to pay for her mother and others to babysit Decedent. In September 1991, Neighbor stopped work to care for Decedent and used her money to make up for loss of income from employment.

Petitioner was unaware of Neighbor's personal use of Decedent's money and of the three CD's Decedent had created in their joint names, until Saturday, January 11, 1992, when Neighbor contacted Petitioner and told her that her name was on the CD's, which were missing, and asked her to sign some blank lost instrument forms. Neighbor would not reveal the amount of money in the three CD's, so Petitioner refused to sign the forms, saying she would look into the matter.

Actually, Petitioner's signature was not needed, as Petitioner learned on Monday, January 13 when she called Commerce Bank. Petitioner learned that Neighbor had been in earlier that day with Decedent, and Decedent had closed out the three CD's and created a new one in Decedent's sole name. Neighbor had taken Decedent to the bank and told the bank officer that Decedent had some accounts she wanted to change. The officer, who later testified that Decedent appeared to understand her actions and their significance, assisted Decedent as she created a new CD. From the total value of the three CD's of approximately $85,000, approximately $79,000 was reinvested in one CD in Decedent's sole name, almost $3,000 was paid in early withdrawal penalty, and another $3,000 was withdrawn and spent by Neighbor on some clothes for Decedent and personal things for Neighbor and her family.

In her deposition, Neighbor stated that Decedent wanted to remove Petitioner's name from the CD's to remove Petitioner's survivorship rights, although Neighbor admitted to needing money from the CD's for her own personal expenses.

After hearing of the transfers, Petitioner filed proceedings for the appointment of a

conservator and guardian for Decedent. Petitioner was appointed conservator, and Neighbor was appointed guardian. Decedent died intestate on March 23, 1993. Neither Neighbor nor her husband are heirs-at-law of Decedent.

In the seventeen months that Decedent lived with Neighbor before the conservatorship, Neighbor spent $110,000 of Decedent's money. Besides the suit before this court, Petitioner filed a separate suit in her capacity as administrator to recover the money belonging to Decedent which Neighbor reached through her power of attorney. This suit concerns only the removal of Petitioner's name from the CD's, not Neighbor's use of Decedent's money.

## I. Undue Influence

■ The trial court dismissed Petitioner's petition because she could not establish that Neighbor received a benefit when Decedent took Petitioner's name off the CD account. When reviewing a summary judgment, appellate courts employ the same tests as are used by trial courts in determining the propriety of the motion. *Welsh v. Bowling Elec. Machinery, Inc.*, 875 S.W.2d 569, 571 (Mo.App. 1994). The question here is whether the facts in this case negate a finding of benefit, one of the elements of undue influence.

Petitioner cites *Estate of Gross v. Gross,* 840 S.W.2d 253 (Mo.App.1992), for the following "three-element presumption test for establishing a submissible case" of undue influence: (1) a confidential and fiduciary relationship, (2) benefaction to the fiduciary, and (3) some additional evidence from which undue influence may be inferred. Petitioner points out that a submissible case can also be made apart from the three-element presumption if "based on other facts and circumstances that are sufficient to permit reasonable inferences of undue influence." *Rhoades v. Chambers,* 759 S.W.2d 398, 410–11 (Mo.App.1988); *Hodges v. Hodges,* 692 S.W.2d 361, 378 (Mo.App.1985). Petitioner does not dispute that benefit is a required element of undue influence.

■ Petitioner's argument simply concludes that Neighbor received a benefit.

The necessary element of benefaction is "some pecuniary benefit to be derived, directly or indirectly ... by the fiduciary by whose activity the [influenced person] is influenced...." *Baker v. Spears,* 357 Mo. 601, 210 S.W.2d 13, 19 (1948). The trial court found that Petitioner could not establish that Neighbor received a benefit when Decedent took Petitioner's name off the joint account. It was significant to the trial court that before Decedent removed Petitioner's name from the account, Neighbor, through the power of attorney, already had access to the money in the CD accounts, and the deletion of Petitioner's name from the accounts did not give Neighbor any greater access or pecuniary benefit than she already had. *See Peters v. Carr,* 654 S.W.2d 317, 322 (Mo.App. 1983)(a sole depositor of joint funds can appropriate any or all of the funds in the account).

Again, the wrong Petitioner alleges she suffered was not that Neighbor spent Decedent's money, but that Neighbor unduly influenced Decedent into removing Petitioner's name from the joint accounts. Therefore, in order for Petitioner to have a cause of action for undue influence against Neighbor, she must establish that a benefit accrued to Neighbor because of the name change. Petitioner suggests that the $3,000 drawn out of the CD account at the same time the names were changed was a benefit. However, while Neighbor benefitted from the CD money she used for personal expenses, Neighbor's benefit was not connected to the name change.

■ The most compelling circumstance in Petitioner's favor is that the evidence as a whole makes Neighbor's actions seem suspicious and supports the theory that Neighbor could have believed that Petitioner's name on the account was an obstacle to her plan to use Decedent's money. Petitioner points out that under § 404.710(6), RSMo. (1994), the power of attorney did not allow Neighbor to "change survivorship interests in the principal's property." It is conceivable that Neighbor could have seen Petitioner's joint ownership as an obstacle to her use of the funds (although it remains unexplained why Neighbor would then alert Petitioner to the existence of the CD's), but this does not

change the above-stated fact that the joint account money was already accessible to Neighbor before the name change. In any case, despite Neighbor's suspicious behavior, in this action Petitioner must still prove that Neighbor benefitted. The theory that Neighbor saw Petitioner as an obstacle only speculates as to any benefit to Neighbor. Unknown and unidentified benefits are not "substantial" and do not support a claim for undue influence. *Burke v. Kehr,* 876 S.W.2d 718, 722 (Mo.App.1994).

Persons make changes in estate plans for a variety of reasons, but for an action involving undue influence to succeed, the element of benefit to the influencer must be established.

The point is denied.

## II. Mental Incapacity

The trial court found that Petitioner did not plead mental incapacity as a separate theory of recovery and could not rely upon evidence of mental incapacity as a defense against summary judgment on the undue influence count. After entry of summary judgment, Petitioner then asked for leave to amend to assert an independent count of Decedent's mental incapacity to change the title to the CD's. The trial court denied leave to amend, citing Rule 55.

Rule 55.33(a) provides that after the filing of a responsive pleading, a party may amend his or her pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Whether to allow the amendment of a pleading is up to the discretion of the trial court, and this court will not disturb its decision absent an obvious and palpable abuse of discretion. *Kenley v. J.E. Jones Const. Co.,* 870 S.W.2d 494, 498 (Mo. App.1994).

This court concludes that the trial court did not abuse its discretion by determining that justice would not have been furthered by allowing Petitioner to amend her petition with a mental incapacity count. Petitioner could have included the count earlier and probably should have, based on the facts. However, Petitioner did not ask to amend until after summary judgment on the undue influence claim. Liberal amendment rules are not meant to be employed as a stratagem of litigation; rather, the purpose of the grant of an amendment is to allow a party to assert a matter unknown or neglected from inadvertence at the time of the original pleading. *Kenley,* 870 S.W.2d at 498 (citing *Rigby Corp. v. Boatmen's Bank and Trust Co.,* 713 S.W.2d 517, 547 (Mo.App.1986)).

Because the court was acting within its discretion, this point is denied.

The judgment is affirmed.

All concur.