William J. BRENNAN, Appellant,

v.

Paul L. MOLINA and Grace L. Molina, Respondents.

No. 69805.

Missouri Court of Appeals, Eastern District, Division Four.

Nov. 26, 1996.

Ziercher & Hocker, P.C., Jeffrey D. Sigmund and Christopher Karlen, Clayton, for Appellant.

Jones, Korum, Waltrip & Jones, Robert E. Jones and Daniel S. Rork, Clayton, for Respondents.

SIMON, Judge.

William J. Brennan (Brennan) appeals from summary judgment granted in favor of Paul L. Molina and his wife, Grace L. Molina, (Molinas), on Count I of Brennan's three count first amended petition alleging fraud in the sale of real property, negligence and breach of contract.

In his sole point on appeal, Brennan contends that the trial court erred in sustaining the motion for summary judgment as to his claim for fraudulent concealment against Molinas. We affirm.

It is well settled that when considering an appeal from summary judgment, we review the record in a light most favorable to the party against whom judgment was entered. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376[1–3] (Mo. banc 1993). Our review is essentially de novo. *Id.* at 376[4–6]. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The burden on a summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine dispute. *Id.* at 387[9].

A "defending" party may establish a right to judgment by showing: (1) facts that negate any one of the claimant's element facts; (2) that the non-movant has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of the facts necessary to support the movant's properly pleaded affirmative defense. *ITT* at 381[16].

The non-movant must show —— by affidavit, depositions, answers to interrogatories, or admissions on file —— that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed. *ITT* at 381[17]. A "genuine issue" exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. *Id.* at 382[17]. A "genuine issue" is a dispute that is real, not merely argumentative, imaginary or frivolous. *Id.*

Where, as here, the trial court grants summary judgment without specifying the basis upon which it was granted, we will uphold the summary judgment if it is appropriate under any theory. *Southwestern Bell Yellow Pages v. Robbins*, 865 S.W.2d 361, 369[14] (Mo.App. E.D.1993).

The record indicates that Molinas owned certain real property located in St. Louis County, Missouri, at 520 Westview Drive. On or about May 5, 1992, Brennan entered into a contract with Molinas to purchase the property.

As provided in the sales agreement, Brennan ordered an independent inspection of the property which was conducted by Associated Building Analysts (ABA). The report resulting from the ABA inspection states in pertinent part:

> The caked mud at the bottom of the furnace leads to a suspicion of some kind of a water problem that conceivably could have related to the condensate water from the air conditioner but more specific evaluation is not possible. The various wood components that meet the floor do not show an indication of repeated or chronic problems, although there are stains on both the vinyl asbestos floor covering and the wood paneling, and specific future performance in regard to frequency or extent of leakage that must be anticipated cannot be predicted.

The ABA report further states that ". . . the configuration of the yard drain in the driveway has been modified so that it no longer has a complete trap."

A second inspection was conducted by the Department of Planning and Development for the City of University City prior to the issuance of an occupancy permit. This inspection found "[e]vidence of water seepage and/or leak" in the basement. The report continued, "[f]ind source of water and take action to correct problem." In an effort to correct this problem a four-foot extension was put on the downspout. Brennan also contacted the Metropolitan Sewer District to inquire about water and flooding problems. He was told that the only record of flooding at the property was in 1982. The record on appeal does not indicate the cause of the water problem.

Brennan filed a three count First Amended Petition seeking recovery against Molinas for fraud, including fraudulent concealment, fraudulent misrepresentation and fraudulent nondisclosure (Count I); against separate defendants Gladys Manion, Inc. (Manion), Cindy L. Scholl (Scholl) and Deborah Edwards (Edwards) for negligence (Count II) and against Molinas for breach of contract (Count III).

In their motion for summary judgment and supporting memorandum, Molinas contended they were entitled to judgment as a matter of law because: (1) nondisclosure of the defect cannot be a basis for fraud because Brennan had inspected the property and, (2) an essential element of fraud, namely "the speaker's knowledge of falsity or his ignorance of its truth," was absent due to the lack of Molinas' knowledge of the defect.

In support of their motion, Molinas cited Brennan's deposition to establish the existence of the ABA and University City reports. Molinas also cited to the deposition of Stafford Manion to establish that Brennan discussed the ABA report and its contents with Stafford Manion, the principal stockholder of Manion, the realty company which represented both parties in this transaction.

Molinas also included copies of both the ABA inspection report and the University City inspection report, and made reference to the applicable sections as they related to potential water problems with the house.

In further support of their motion, Molinas produced an affidavit of Paul Molina, wherein he stated that: he did not have any conversa-

tions regarding water in the basement with Brennan prior to the closing of the sale; he had no knowledge of conversations regarding water in the basement between agents of Manion, who were acting as agents for both buyer and seller in this transaction; Brennan waived the building inspection contingency in return for a $1,000 reduction in the purchase price to cover several repairs including the yard drain; and the sellers made no representation that any or all matters disclosed by the ABA and University City reports had been remedied in connection with the waiver of the inspection contingency.

Brennan filed a response to the motion and a memorandum in which he cited portions of the Molinas' depositions, which established that Grace and Paul Molina were aware of water problems in the lower level and the garage. Molinas admitted in their depositions that water did puddle in the lower level and the garage. Brennan also cited Grace Molina's deposition to establish that portions of both the lower level and the garage were painted prior to the sale.

Additionally, by way of citation to Molinas' depositions, Brennan contends that Molinas engaged in written correspondence with him regarding the condition of the property by having their agents provide a "spawn" sheet. Brennan also alleges that defendants engaged in oral correspondence with him by and through their real estate agents. Specifically, he references parts of Molinas' depositions to establish that they told Scholl, the listing agent, about water in the basement. Brennan also cited his own deposition to show that he had discussed the water leakage mentioned in the University City report and the mud in the furnace mentioned in the ABA report with Scholl. The conclusion of this conversation was to repair the leakage by the downspout area and to look for additional evidence regarding a water problem associated with the mud in the furnace.

The trial court dismissed defendants Manion, Scholl and Edwards disposing of Count II, and granted summary judgment in favor of Molinas on Count I. Subsequent to the grant of summary judgment by the trial court, Brennan dismissed "all remaining counts ... without prejudice, as to all re-maining defendants" and thereby disposed of Count III. This appeal follows from the grant of summary judgment on Count I.

■ In his sole point on appeal Brennan contends that the trial court erred in granting Molinas' motion for summary judgment because genuine issues of material fact exist with respect to whether Molinas' actions constitute fraudulent concealment. He contends that Molinas "failed to provide the trial court with any reference, response or argument with regard to the fraudulent acts of concealment averred by Brennan in his First Amended Petition." Therefore, he continues, the grant of the motion for summary judgement applied only to fraudulent acts of omission and not fraudulent acts of concealment.

■ Brennan contends that the painting of the lower level and the garage by Molinas concealed the existence of a water problem from him. In response, Molinas maintain that they had no knowledge of the type of water problems Brennan has experienced. Concealment may operate as a representation in establishing fraud because, as we stated in *Barylski v. Andrews,* 439 S.W.2d 536, 539[4] (Mo.App.1969), "a representation is not confined to words or positive assertions; it may consist as well of deeds, acts, or artifices of a nature calculated to mislead another and thereby to allow the fraud-feasor to obtain an undue advantage over him." *Molinas rely on Mobley v. Copeland,* 828 S.W.2d 717, 726[8] (Mo.App.1992), for the proposition that "[w]hen a party makes an independent investigation he is presumed to have relied on what he learned from that investigation and may not claim that he relied on a misrepresentation." Based on this principle, Molinas contend that Brennan cannot claim a false representation by concealment of the water problem by painting the lower level and the garage because two inspections revealed evidence of a water problem.

Responding, Brennan suggests that he has overcome the presumption that he relied on what he discovered in the inspections. He references his deposition in which he states that he "did not rely on his own walk-through

of the house nor on the inspector's limited report."

Clearly, each inspection report indicates the existence of a water problem. The ABA inspection revealed "caked mud on the bottom of the furnace [which] leads to a suspicion of some kind of a water problem" and "stains on both the vinyl asbestos floor covering and the wood paneling." The report went on to speculate that the cause might be "condensate water from the air conditioning." It concluded by stating that "specific future performance in regard to frequency or extent of leakage **that must be anticipated** cannot be predicted." [Emphasis added]. The University City inspection relating to the issuance of an occupancy permit revealed "[e]vidence of water seepage and/or leak" in the basement. This report went on to instruct the parties to "[f]ind source of water and take action to correct problem." Brennan testifies in his deposition that a four-foot extension was put on a gutter downspout to correct the water seepage problem mentioned in the University City report.

In addition, the ABA report found that "the configuration of the yard drain in the driveway has been modified so that it no longer has a complete trap." In response to this and other repairs noted in the ABA report, Brennan removed the termite and building inspection contingencies from the sales contract in exchange for a $1,000 reduction in the purchase price to cover the cost of repairs.

■ In *Consumers Cooperative Association v. McMahan*, 393 S.W.2d 552, 556[6] (Mo.1965), our Supreme Court stated that "where a party makes his own independent investigation, he will be presumed to have been guided by what he learned and the conclusions he reached and will not be permitted to say that he relied on misrepresentations of another and that he was deceived thereby."

However, we have recognized three exceptions to the general rule enunciated in *Consumers Cooperative Association*. *Iota Management Corp. v. Boulevard Inv. Co.*, 731 S.W.2d 399, 413 [10, 11] (Mo.App.1987). First, if the party making the independent inspection makes only a partial inspection and relies on the misrepresentations as well as the inspection, he may maintain an action for fraud. Second, the buyer is entitled to rely on the representation when he lacks equal footing for learning the truth where the facts are peculiarly within the knowledge of the party making the representation and are difficult to ascertain. Third, even if the parties stand on equal footing, if the seller makes a distinct and specific representation, the buyer has the right to rely on the representation.

Brennan relied on *Colgan v. Washington Realty Company*, 879 S.W.2d 686 (Mo.App. E.D.1994), where, prior to the closing on the property the buyers had an independent inspection conducted. The resulting inspection report indicated a need to grout and seal the patio to prevent "possible leakage" through the patio and into the garage below. The report also stated that the pipes between the patio and the roof of the garage were "found to be in good order" and indicated that "old water marks probably correspond to this seal."

The buyer inquired of both the sellers and the employees of the seller's agent regarding water problems discovered by the inspection. The sellers responded that a pipe had burst on the north side of the garage, but no other problems had occurred. The agent's employees responded that they were unaware of any water problems. The day of closing, after the closing was completed, a rainstorm occurred which caused leakage through the patio and caused the roof of the garage to collapse. The record contained a sworn statement of a home improvement worker hired by the sellers to paint and caulk the deck. This statement noted that the sellers believed the caulking would stop the water leakage into the garage, therefore calling into question the statement of the sellers that there were no water problems. We found that all three of the exceptions to the *Consumers Cooperative Association* rule were applicable in *Colgan*. Notably, the sellers in *Colgan* made a distinct and specific representation that there were no water problems when they had knowledge of a water problem. No similar representation exists in the present case.

However, Brennan also relies on *Colgan,* 879 S.W.2d at 691[9], for the proposition that, "in the vast majority of cases, a seller, who has lived in a property, as opposed to a mere investor, would have knowledge which is superior to a buyer's knowledge concerning the property's condition." While this may be true in the present case, Brennan had inspections which made him aware of the existence of a water problem. Further, he removed the building inspection contingency in return for a $1,000 reduction in the purchase price. Thus, we find that none of the exceptions apply. Since the inspection reports sufficiently advised Brennan of a water problem he is not permitted to claim reliance on a false representation by an alleged concealment. Summary judgment was properly granted.

Judgment affirmed.

RHODES RUSSELL, P.J., and KAROHL, J., concur.