Lonnie F. **DUEKER** and Patricia A. Dueker, and John L. Shannon, Appellants,

v.

Samuel L. **GILL**, First Midwest Bank of Poplar Bluff, N. A., Gene Shain, Earl J. Miller and Juanita Miller, Respondents.

No. 26591.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 7, 2005.

Mary Eftink Boner, Jackson, for Appellants.

Sanjay K. Varma, Poplar Bluff, for Respondent Millers.

John L. Cook, Cape Girardeau, for Respondent Gill.

David W. White & Jacqueline M. Sexton, Kansas City, for Respondents Bank & Gene Shain.

ROBERT S. BARNEY, Judge.

Appellants Lonnie and Patricia Dueker, and John L. Shannon (collectively "Plaintiffs") brought suit against Respondents Samuel L. Gill ("Gill"), First Midwest Bank of Poplar Bluff, N.A. ("the Bank"), Gene Shain ("Shain"), and Earl J. Miller and Juanita Miller ("the Millers"). This suit arises out of Plaintiffs' purchase of Miller's Motor Lodge ("the Lodge") from the Millers. In their petition, Plaintiffs brought Count I for fraudulent misrepresentation and Count II for professional negligence against Gill, who performed an appraisal on the Lodge prior to Plaintiffs' purchase. Plaintiffs also brought a third count for civil conspiracy against Gill, Shain, the Millers, and the Bank alleging they conspired to sell the Lodge at an inflated price. The trial court granted Gill's motion for summary judgment on Counts I and II and also granted summary judgment in favor of all Defendants on Count III. Further, the trial court denied Plaintiffs' motion for leave to file a "First Amended Petition" to add a count for fraudulent misrepresentation against Shain, the Bank and the Millers. Plaintiffs now appeal. We affirm.

The record reveals that while visiting Miller's Motor Lodge in September of 1996, Lonnie Dueker ("Dueker") learned from the Millers that the Lodge was for sale. When asked about the purchase price, the Millers informed Dueker that

the price would be at least $850,000.00. Dueker and his wife returned home and discussed purchasing the Lodge with their business partner, John L. Shannon ("Shannon"). Dueker investigated the profitability of the Lodge in order to ascertain whether it would sustain the purchase price and even requested a copy of the Millers' income tax returns for past years, although the Millers failed to comply with this request. Instead of providing the requested information, the Millers provided Dueker with an income and expense spreadsheet ("the spreadsheet") which had been prepared by an employee of the Bank. The spreadsheet showed a gross income for the Lodge of $251,600.00 for the year of 1995.

In addition to viewing the spreadsheet, Dueker went to the Missouri Department of Revenue and acquired sales tax reports for the Lodge. Dueker noted that the income reported to the State did not match the income on the spreadsheet. When Dueker approached the Millers with this knowledge, they explained that the sales tax report did not include tax exempt sales to the Army Corps of Engineers nor did it include cash sales.

On September 24, 1996, Dueker sent the Millers a letter confirming his intent to purchase the Lodge for $850,000.00 subject to two contingencies, the sale of rental property owned by Dueker and the availability of reasonable financing.

In October of 1996, the Millers informed Dueker that Shain, an officer of the Bank, was interested in financing the purchase price of the Lodge. Miller introduced Dueker to Shain and a loan application was prepared. An appraisal of the Lodge was required in order to finance the purchase price and Dueker told Shain to choose one of the Bank's approved appraisers. Shain chose Gill to appraise the Lodge.

Shain prepared the contract for sale and delivered it to Dueker while he was staying at the Lodge. At that time, Shain advised Dueker that the appraised value of the Lodge was expected to be around $1,000,000.00. Gill prepared and delivered to the Bank an appraisal dated November 26, 1996, showing the appraised value of the Lodge to be $956,000.00 under "an income approach" and $1,123,000.00 under a "cost approach." Dueker and Shannon visited the Bank to view the appraisal shortly thereafter. At that time, Dueker thought Gill's "income approach" valuation of $956,000.00 was inaccurate, but he considered the "cost approach" valuation to be reasonable.

On November 30, 1996, a contract for the sale of the Lodge for the price of $850,000.00 was signed by the Duekers, Shannon, and the Millers. Dueker purchased a duplicate of Gill's appraisal on December 23, 1996. The sale of the Lodge was closed on January 7, 1997. Of the $850,000.00 purchase price, the Bank financed $500,000.00; the Millers financed $280,000.00; and Plaintiffs put down $70,000.00 of their own money. Plaintiffs also purchased a boat storage facility from the Millers for $100,000.00, of which $90,525.00 was financed by the Millers.

In August of 2000, through the course of appealing a Butler County property tax assessment, Dueker testified that he became suspicious of the Lodge's original appraised value as determined by Gill. The chief appraiser for Butler County told Dueker that the Lodge was worth half of the value stated in Gill's appraisal. Dueker then talked to appraiser Kent Sexton ("Sexton"), who informed him that he should not rely on the Gill appraisal. At this time, Dueker was of the opinion that the Millers, Gill, and Shain had conspired to sell the Lodge for much more than it was worth.

On August 9, 2001, Dueker went to the Bank to view his loan files. According to Dueker, before showing the file to him, Shain appeared to remove materials from the file. When confronted, Shain informed Dueker that he had to remove confidential bank information before turning the file over to him.

On that same date, Plaintiffs filed suit as previously set out. At that time, both parties initiated discovery in this matter and discovery continued until May of 2003.

In addition to those facts already mentioned, the record reveals the following information which was learned through discovery. It appears that on a typical real estate loan, the Bank sought a seventy-five to eighty percent loan-to-value ratio when financing the purchase of real estate. Here, the Bank financed $500,000.00 of the purchase price of the Lodge, which is approximately fifty-nine percent of the total purchase price of $850,000.00, well below their typical loan-to-value ratio. Additionally, it was revealed that Gill never personally visited the Lodge in preparing his appraisal and that Gill did not use comparable sales in his valuation even though Dueker had been told that without the use of comparable sales figures an appraisal is useless.[1] Additionally, the fact that the square footage of the Lodge was overstated in the appraisal inflated the "cost of replacement" value of the Lodge. Further, the spreadsheet provided to Dueker by the Millers included income from a miniature golf course, which was not a part of the sale of the Lodge.

On February 18, 2003, Shain and the Bank filed a motion for summary judgment which was followed by the Millers' motion for summary judgment on September 4, 2003. On September 24, 2003, Plaintiffs filed a motion for leave to file an amended petition adding a count for fraudulent misrepresentation against Shain, the Millers, and the Bank for their representation of the income and expenses of the Lodge. Gill filed for summary judgment on February 2, 2004.

On September 13, 2004, the trial court granted Gill's motion for summary judgment on Counts I and II and also granted summary judgment in favor of all Defendants on Count III. Plaintiffs' motion for leave to file an amended petition was denied by the trial court on February 3, 2004. This appeal followed.

Plaintiffs now allege four points of trial court error. In their first point relied on, Plaintiffs assert it was error for the trial court to grant summary judgment in favor of Gill on the fraudulent misrepresentation count. Plaintiffs' second point relied on maintains it was error for the trial court to grant summary judgment in favor of Gill on the professional negligence count. Third, Plaintiffs assert the trial court erred by granting summary judgment in favor of all Defendants on the civil conspiracy count. Lastly, Plaintiffs allege the trial court abused its discretion in denying Plaintiffs' motion for leave to file a "First Amended Petition" to add a count for fraudulent misrepresentation against Shain, the Millers and the Bank.

Appellate review of whether summary judgment is appropriate is an issue of law, therefore our review is "essentially de novo." *Stanley v. City of Independence*, 995 S.W.2d 485, 486 (Mo. banc 1999). "When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered."

---

1. In his appraisal, Gill explained "that comparable sales for a lodging facility of this type are very difficult to locate in a small rural community. Therefore the Sales Comparison Approach is not applicable to the assignment."

*ITT Comm'l Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the motion." *Reese v. Ryan's Family Steakhouses, Inc.*, 19 S.W.3d 749, 751 (Mo. App.2000).

 A grant of summary judgment is appropriate when the movant establishes there are no genuine issues of material fact and they are entitled to a judgment as a matter of law. *McAninch v. Robinson*, 942 S.W.2d 452, 456 (Mo.App.1997). A genuine issue of fact must be a "real and substantial one ... consisting not merely of conjecture, theory and possibilities." *ITT*, 854 S.W.2d at 378.

> A 'defending party' may establish a right to [summary] judgment by showing (1) facts that negate any one of the claimant's elements facts; (2) that the non-movant has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* at 381. When a trial court grants summary judgment without articulating the reason it was granted, we will affirm if summary judgment is appropriate under any theory. *Brennan v. Molina*, 934 S.W.2d 631, 633 (Mo.App.1996).

In their first point on appeal, Plaintiffs maintain:

> The trial court erred in granting summary judgment in favor of Sam Gill on Count I of Plaintiffs' petition for fraudulent misrepresentation of the value of Miller's Motor Lodge because there are issues of material fact in dispute regarding what the value of the Lodge was in November, 1996, whether Gill knew the value he stated was false and whether Plaintiffs relied on Gill's representations; [and] that representations of value by an appraiser do give rise to a cause of action for fraudulent misrepresentation and Plaintiffs had a right to rely on [Gill's] representations.

We disagree. In his motion for summary judgment, Gill alleges that Plaintiffs' failed to assert all "nine [of the] necessary elements to establish a case of fraudulent misrepresentation." He argues he was entitled to a judgment as a matter of law based on his assertion that "Plaintiffs are unable to establish that a representation of fact was made, that they relied on the statement, that they had a right to rely on the statement or that the statement was false."

In their response to Gill's summary judgment motion, Plaintiffs allege Gill failed to make a prima facie case that there were no genuine issues of material fact with regard to several of the fraudulent misrepresentation elements.

 The elements of an action for fraudulent misrepresentation are as follows: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or his ignorance of the truth; (5) the speaker's intent that his statement be acted upon; (6) the hearer's ignorance of the falsity of the statement; (7) his reliance on the truth of the statement; (8) the hearer's right to rely on the statement; and (9) the hearer's consequent and proximate injuries. *Blanke v. Hendrickson*, 944 S.W.2d 943, 944 (Mo.App. 1997). Each element must be supported by substantial evidence. *Id.* "Failure to prove any of the requisite elements is fatal to a claim for fraud." *Id.*

■ In support of his motion for summary judgment, Gill relies on Dueker's letters to the Millers, sent prior to the appraisal's completion, coupled with his deposition testimony, to illustrate that Plaintiffs did not rely upon Gill's appraisal.

In particular, Gill presents evidence from the record showing Plaintiffs had already committed to purchase the Lodge from the Millers on September 17, 1996, and on September 24, 1996, agreed on the price of $850,000.00 before Gill's appraisal was ever presented to them in late November of 1996.

In a letter sent to Earl ("Lefty") Miller on September 17, 1996, Dueker related, "[o]nce again, as far as I'm concerned, we have a deal." This was followed by a letter to the Millers, dated September 24, 1996, wherein Dueker wrote:

> I am writing to request that you consider this letter as confirmation of my intent to purchase Miller's Motor Lodge for $850,000. This transaction has two contingencies.
>
> > The sale of rental property that I own in Kansas City, the proceeds of which will be used for the down payment.
> >
> > The availability of reasonable financing.
>
> My target is to close during the first week [of] November before the next Federal Reserve Bank OMC meeting.

Ownership training can start immediately, with actual transition of all responsibilities on January 1, 1997.

> In closing, let me assure you that Pat and I are working very aggressively to meet these dates and I will keep you informed as to our progress.
> Sincerely,
> /s/ Larry Dueker

Additionally, Gill presents Dueker's deposition testimony, as set out in Gill's motion for summary judgment, where Dueker states that Dueker and the Millers had arrived at an agreement for the purchase price of the Lodge on September 24, 1996.[2] As previously set out there is no dispute that Plaintiffs did not view Gill's appraisal until November 26, 1996.[3] As such, Gill's appraisal was not given to induce the purchase of the Lodge, because the purchase price had already been determined by Dueker and the Millers.[4]

In their response to Gill's motion for summary judgment, Plaintiffs present the deposition testimony of Dueker in support of their claim they relied on Gill's appraisal. However, they do not show that their review of the appraisal came before Dueker's letter of September 24, 1996, confirming his intent to purchase the Lodge. In fact, in their response to Gill's summary judgment motion, Plaintiffs seem to concentrate more on the fact that they relied on the spreadsheet than they do on the appraisal in making their decision to buy

---

**2.** Under cross-examination the following questions were posed to Dueker during his deposition:

Q. You had in fact arrived at an agreement for purchase price with the seller on September 24, 1996, correct?
A. That is correct.
Q. And you did not make that agreement contingent upon an appraisal?
A. Not in writing, no.
Q. And you didn't tell Mr. Miller that verbally, did you?

A. No.

**3.** Gill's appraisal was ordered by the Bank in order to determine how much of the purchase price the bank should finance.

**4.** Dueker's partner, Shannon, and Dueker's wife, Patricia A. Dueker, essentially testified they relied on Dueker's assessment of the worth and economic viability of the Lodge.

the Lodge. Plaintiffs failure to show reliance on Gill's appraisal in their response to Gill's summary judgment motion is "fatal to [their] claim for fraud." *Blanke*, 944 S.W.2d at 944.

Accordingly, we find that Plaintiffs' fraudulent misrepresentation claim was properly disposed of by summary judgment.[5] Gill, as the "defending party," established his right to summary judgment by showing facts that negated Plaintiffs' reliance on the truth of Gill's appraisal. *ITT*, 854 S.W.2d at 381. Point denied.

In their second point on appeal, Plaintiffs argue:

> The trial court erred in granting summary judgment in favor of Sam Gill on Count II of Plaintiffs' petition for professional negligence in representing the value of Miller's Motor Lodge because there remain issues of material fact in dispute regarding whether Plaintiffs relied on Gill's representations and [Gill] is not entitled to judgment as a matter of law in that ... Gill held a duty to Plaintiffs as third party beneficiaries of the appraisal Gill prepared, the information provided by Gill in his appraisal was intentionally provided for the guidance of a limited group, including the Plaintiffs and as a result of Plaintiffs' reliance on the information provided by Gill, they were damaged.

In Gill's motion for summary judgment on Count II, he asserts Plaintiffs' cause of action for professional negligence related to the appraisal had to fail because Gill "owed no duty to the Plaintiffs" when he prepared the appraisal at the Bank's request. Additionally, he asserts that "any alleged negligence of Mr. Gill did not cause any damages Plaintiffs may have sustained." In Gill's memorandum of law in support of his motion for summary judgment, Gill explains that "any claim of causation that plaintiffs might make, is dependent on a claim of reliance. Reliance which does not exist as set out under Count I, [discussed in Point One] above."[6]

> To state a claim for negligent misrepresentation, [P]laintiffs must plead facts that establish: (1) speaker supplied information in the course of his business or because of some other pecuniary interest; (2) due to speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) listener justifiably relied on the information; and (5) that as a result of listener's reliance on the statement, he/she suffered a pecuniary loss.

*Miller v. Big River Concrete, L.L.C.*, 14 S.W.3d 129, 133 (Mo.App.2000);[7] *Colgan*

---

**5.** *See also Williams v. Mercantile Bank*, 845 S.W.2d 78, 84–5 (Mo.App.1993) (holding that the plaintiffs' fraud claim failed where it was premised upon a misrepresentation made after the transaction was entered into).

**6.** We note that professional negligence, without the requirement of proving privity of contract, has been recognized as an actionable tort in this jurisdiction in *Westerhold v. Carroll*, 419 S.W.2d 73 (Mo.1967), and *Aluma Kraft Mfg. Co. v. Elmer Fox & Co.*, 493 S.W.2d 378 (Mo.App.1973). Further this Court has recognized "there is some general authority that commercial real estate appraisers may be

held liable for negligent misrepresentation." *First Nat'l Bank of Sikeston v. Goodnight*, 721 S.W.2d 122, 124 (Mo.App.1986).

**7.** "In certain cases, we have held that a third party, although not in privity, has a claim for the alleged negligence of a professional who renders an opinion upon which the third person relies to its detriment." *Miller*, 14 S.W.3d at 134; *see also Westerhold*, 419 S.W.2d at 81. "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are: (1) the

*v. Wash. Realty Co.*, 879 S.W.2d 686, 689 (Mo.App.1994). "If [a plaintiff] cannot provide proof of all of the elements of ... negligent misrepresentation, a trial court may grant [a defendant's] motion for summary judgment on that count of the petition." *Id.*

■ In their response to Gill's summary judgment motion, Plaintiffs maintain that because the information in the appraisal was prepared "for the particular business transaction of the sale of [the Lodge] from [the Millers] to Plaintiffs ..." it was meant to provide "guidance" to all of the parties involved, including themselves. Plaintiffs maintain that because the Bank "regularly lets their customers see an appraisal" the Bank implicitly intended that their customers would rely upon and be guided by the veracity of such a document.

"[I]n response to a properly supported motion for summary judgment, the responding party must set forth 'specific facts' showing that there is a genuine issue for trial." *Dana Commercial Credit Corp. v. Cukjati*, 880 S.W.2d 612, 617 (Mo.App. 1994). Unfortunately for Plaintiffs, they have again failed to assert any "specific facts" which sufficiently counter Gill's evidence in support of his motion for summary judgment. Plaintiffs simply failed to present evidence showing how they relied upon the appraisal prior to Dueker's letter of September 24, 1996, confirming Dueker's intent to purchase the Lodge for $850,000.00. Our review of the letter reveals that it is devoid of a statement that the intent to purchase was contingent upon Plaintiffs' review of an appraisal.

As in Point One, Plaintiffs have failed to provide material facts in their response to Gill's summary judgment motion showing they relied upon the appraisal at issue prior to agreeing to purchase the Lodge. Gill has made a showing that there exist no genuine issues of material facts relating to Plaintiffs' lack of reliance on the part of Gill's appraisal, thereby negating an essential element of Plaintiffs' case. *Colgan v. Wash. Realty Co.*, 879 S.W.2d at 689. Point denied.

We will address Plaintiffs' fourth point next, as it bears on our ruling on their third point. In their fourth point, Plaintiffs argue:

> The trial court erred in denying Plaintiffs' motion for leave to file First Amended Petition to add a count for fraudulent misrepresentation [against] Shain, the Millers and the Bank because it is an abuse of discretion in that the cause of action arose out of the same circumstances as the case presently pending before the court, the statute of limitations had not run, final judgment had not been enter[e]d, and Plaintiffs did not have the facts available to them at the time of the original filing of the case to bring the count at that time.

■ In our analysis we will first take up Plaintiffs' contention that the statute of limitations had not run on their First Amended Petition to add a count for fraudulent misrepresentation against the Bank, Shain and the Millers (collectively "Defendants"). Defendants argue that the five year statute of limitations for fraud [8] had

extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to him; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to defendant's conduct; and (6) the policy of preventing future harm.

Each and every one of the above elements are [sic] not absolutely necessary to authorize an action to be maintained." *Miller*, 14 S.W.3d at 134.

8. "A maximum of ten years is given for the discovery of the fraud and suit must be filed within five years after the discovery of the

already run at the time that Plaintiffs filed their First Amended Petition on September 24, 2003, because the limitations period began accruing in September of 1996 when Dueker first received the spreadsheet and became suspicious of the transaction.[9] Even assuming, arguendo, that the limitations period began accruing in September of 1996, the motion to add a count for fraudulent misrepresentation was timely because it related back to the filing of the initial petition on August 9, 2001.

■ Rule 55.33(c) sets out that when an amendment "arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading the amendment relates back to the date of the original pleading."[10] "This rule abrogates the old 'same evidence' and 'theory of law tests in favor of the 'conduct, transaction, or occurrence' test." *Johnson v. GMAC Mtg. Corp.*, 162 S.W.3d 110, 117 (Mo.App.2004). "'The language, 'conduct, transaction or occurrence,' as used in Rule 55.33(c), is accorded broad and liberal construction.'" *Id.* (quoting *Mogley v. Fleming*, 11 S.W.3d 740, 750 (Mo.App.1999)); see also *Koerper & Co. v. Unitel Int'l, Inc.*, 739 S.W.2d 705–06 (Mo. banc 1987).

Having found that the statute of limitations had not run on Plaintiffs' count for fraudulent misrepresentation, we must now address whether it was an abuse of discretion for the trial court to deny Plaintiffs' motion for leave to file their First Amended Petition. *See Moore v. Firstar Bank*, 96 S.W.3d 898, 903 (Mo.App.2003).

■ Rule 55.33(a) instructs us that a petition may be amended by leave of the court, and that such "leave shall be freely given when justice so requires." The right to amend a pleading, however, is not absolute. *Vickers v. Progressive Cas. Ins. Co.*, 979 S.W.2d 200, 205 (Mo.App.1998). "Factors that should be considered in deciding whether to allow leave to amend a petition are: (1) hardship to the moving party if leave is not granted; (2) reasons for failure to include any new matter in earlier pleadings; (3) timeliness of the application; (4) whether an amendment could cure the inadequacy of the moving party's pleading; and (5) injustice resulting to the party opposing the motion, should it be granted." *Moore*, 96 S.W.3d at 904.

■ In this context, "[t]he denial of an amendment is presumed correct and the burden is on the proponent to show that the trial court clearly and palpably abused its discretion." *Vickers*, 979 S.W.2d at 205. "Judicial discretion is abused when a ruling is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Rhodus v. Wheeler*, 927 S.W.2d 433, 436 (Mo.App. 1996). "The determination of whether a circuit court abused its discretion in denying leave to amend is best measured in terms of whether justice is furthered or subverted by the course taken." *Baker v. City of Kansas City*, 671 S.W.2d 325, 329 (Mo.App.1984).

This Court has explained that "[t]he recognized purpose of allowing amendments to pleadings is to allow a party to present evidence that was overlooked or unknown when the original pleading was filed without changing the original cause of action." *Moore*, 96 S.W.3d at 904. *See also Trans World Airlines, Inc. v. Assoc. Aviation Underwriters*, 58 S.W.3d 609, 624 (Mo. App.2001). Further, we held in *Moore*,

---

fraud. . . ." *Berry v. Dagley*, 484 S.W.2d 182, 184 (Mo.1972).

**9.** Plaintiffs' fraud claim appears to be premised on the fact that the spreadsheet figures

misrepresented the income and, thus, the value of the Lodge.

**10.** Rule references are to Missouri Court Rules (2005), unless otherwise set out.

that it was not an abuse of discretion to deny plaintiff's proposed second amended petition because, "the new claims [were] based entirely on the facts and allegations in the original petition, only under new causes of action." *Moore,* 96 S.W.3d at 904.

Here, as in *Moore,* "Plaintiff[s] ... failed to show any reason why the matters were not included in the original petition." *Id.* While Plaintiffs' new claim is not based entirely on the facts and allegations in the original petition, the amended pleading has failed to include any facts unknown at the time the original pleading was filed on August 9, 2001, to-wit:

38. That during or about September 1996 Defendants Earl Miller and Juanita Miller, being desirous of selling to Plaintiffs certain property known as Miller's Motor Lodge in Butler County, Missouri, did with intent to deceive and defraud Plaintiffs represent to Plaintiffs that the Lodge generated gross revenues during 1995 of $251,600.00 and had expenses of $117, 765.60 and supported debt service, both principal and interest, of $90,371.50.

39. That Defendants Gene Shain and First Midwest Bank of Poplar Bluff prepared the spreadsheet representing the above-referenced 1995 monthly cash flow of Miller's Motor Lodge with the intent to deceive and defraud Plaintiffs.

. . .

41. In truth and as Defendants well knew, the representations were false and the Lodge did not generate gross income of $251,600.00 in 1995.

42. In fact, Miller's Motor Lodge's gross revenues for 1995 were $184,301.00, for 1994 were $180,662, for 1993 were $161,12X [sic], and for 1992 were $145,472.

While Plaintiffs contend they had no evidence that the representations in the spreadsheet were not supported by the income and expenses of the Lodge, and that they could not support a count for fraudulent misrepresentation against Defendants until they received the Millers' tax returns through discovery, the record reveals otherwise.

Dueker was told upon receipt of the spreadsheet in September of 1996 that it was prepared by an employee of the Bank. Later, Dueker noted that when he received the Lodge's sales tax figures from the Missouri Department of Revenue, they were inconsistent with the income on the spreadsheet. Furthermore, Plaintiffs were suspicious of wrongdoing on the part of all Defendants when they filed their initial petition. Plaintiffs plead additional facts and allegations in their amended petition, but do not provide sufficient reasons for not including these facts and allegations in their initial petition filed two years previously and almost seven years since the events under consideration. *Moore,* 96 S.W.3d at 904. It appears from the face of the record that only when faced with summary judgment did Plaintiffs seek to amend their original petition. "Liberal amendment rules are not meant to be employed as a stratagem of litigation; rather, the purpose of the grant of an amendment is to allow a party to assert a matter unknown or neglected from inadvertence at the time of the original pleading." *Estate of Anderson v. Day,* 921 S.W.2d 35, 39 (Mo.App.1996).

Applying the five factors related above, we do not find that the trial court's actions amount to an abuse of discretion. *Sill v. Burlington N. R.R.,* 87 S.W.3d 386, 395 (Mo.App.2002). Here, by denying leave to amend, there is no indication that justice is subverted rather than furthered. *Baker,* 671 S.W.2d at 329. The amended petition "did not present any new facts or circum-

stances that could not have been raised earlier." *Vickers,* 979 S.W.2d at 205. The trial court's denial of Plaintiffs' motion to amend their petition was not "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Rhodus,* 927 S.W.2d at 436. Point denied.

Finally, in Plaintiffs' third point on appeal they argue the following:

> The trial court erred in granting summary judgment in favor of all Defendants on Count III of Plaintiffs' petition for civil conspiracy because there remains genuine issues of material fact in dispute regarding whether the circumstances show an agreement among Defendants to do an unlawful act and Defendants are not entitled to judgment as a matter of law in that two or more of the Defendants had a meeting of the minds to accomplish enticing Plaintiffs to purchase Miller's Motor Lodge for a value greater than its fair market value by providing them with a misrepresentative appraisal and other actions, thereby damaging Plaintiffs.

 "A 'civil conspiracy' is an agreement or understanding between persons to do an unlawful act, or to use unlawful means to do a lawful act." *Oak Bluff Partners, Inc. v. Meyer,* 3 S.W.3d 777, 780–81 (Mo. banc.1999). "A conspiracy is not actionable in its own right because it does not exist apart from the statement of an underlying claim." *Roth v. La Societe Anonyme Turbomeca France,* 120 S.W.3d 764, 777 (Mo.App. 2003). "The unlawful acts done in pursuit of a conspiracy give rise to the action. Proving the conspiracy concerns only the co-conspirators' liability as joint tortfeasors." *Id.* at 778. If the unlawful acts alleged to be an element of the conspiracy fail as a matter of law then so does the claim for conspiracy. *Oak Bluff,* 3 S.W.3d at 781.

In his motion for summary judgment, Gill maintained that because "conspiracy is not an independent cause of action" and he was entitled to summary judgment on the underlying claims, i.e. Counts I and II, he was entitled as a matter of law to summary judgment on Count III. In response, Plaintiffs argued that because "[a] civil conspiracy can be proven by circumstantial evidence" summary judgment was not appropriate.

Plaintiffs are incorrect. Their civil conspiracy claim is simply not actionable in its own right and because their underlying claims have failed to survive summary judgment, as detailed above, Plaintiffs' civil conspiracy claim fails as a matter of law. *Oak Bluff,* 3 S.W.3d at 781; *Roth,* 120 S.W.3d at 777. Point denied.

The judgment is affirmed.

GARRISON, J., and BATES, C.J.