Lonnie F. DUEKER and Patricia A. Dueker and John L. Shannon, Plaintiffs–Appellants,

v.

FIRST MIDWEST BANK OF POPLAR BLUFF, Gene Shain and Earl J. Miller and Juanita Miller, husband and wife, Defendants–Respondents.

No. 27530.

Missouri Court of Appeals, Southern District, Division One.

May 21, 2007.

**182**

Mary Eftink Boner, Jackson, for Appellants.

David W. White, Jacqueline M. Sexton, Kansas City, for Respondents First Midwest Bank of Poplar Bluff and Gene Shain.

Sanjay K. Varma, Poplar Bluff, for Respondents Earl & Juanita Miller.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Appellants Lonnie F. Dueker, Patricia A. Dueker, and John L. Shannon bring this appeal as a result of a dismissal of their lawsuit for fraudulent misrepresentation against Respondents First Midwest Bank of Poplar Bluff ("the Bank"), Gene Shain, and Earl and Juanita Miller ("the Millers"). We affirm.

The events leading to the filing of this lawsuit were the subject of an earlier suit involving the same parties and the same event, Appellants' purchase of Miller's Motor Lodge ("the Lodge") from the Millers. The first suit resulted in a summary judgment granted against Appellants and affirmed by this Court in *Dueker v. Gill,* 175 S.W.3d 662 (Mo.App. S.D.2005) (*"Dueker I"*). While the appeal in *Dueker I* was pending, Appellants filed the action which is the subject of the current appeal. The current appeal claims the second suit does not come within the purview of the first grant of summary judgment because this suit involves a separate and distinct allegation against the Respondents, which is not barred by the statute of limitations and which is not an improper splitting of a cause of action. We disagree.

Because our opinion in the first case, *Dueker I,* set out the facts in great detail, we will limit this opinion to a brief rendition of the facts without further attribution to *Dueker I.* Appellants sought to purchase the Lodge from the Millers in 1996. In the process of closing on that purchase, but subsequent to the agreement on the purchase price, the Millers provided an income and expense spreadsheet in September 1996, which had been prepared by an employee of the Bank. Lonnie F. Dueker ("Dueker"), who had a college minor in accounting, also went to the Missouri Department of Revenue and acquired sales tax reports for the Lodge. He noted, prior to the completion of the sale, that the income reported to the State did not match the income on the spreadsheet; however, the Millers explained that the sales tax report did not include tax exempt sales to the Army Corps of Engineers nor did it include cash sales. Dueker and the Millers arrived at an agreement for the purchase price of the Lodge on September 24, 1996; the confirmation of Dueker's intent to purchase the Lodge was subject to two contingencies—the sale of rental property owned by Dueker and the availability of reasonable financing. Neither of those contingencies is the subject of this suit.

In October of 1996, the Millers informed Dueker that Shain, an officer of the Bank, was interested in financing the purchase price of the Lodge. Earl J. Miller ("Miller") introduced Dueker to Shain and a loan application was prepared. An appraisal of the Lodge was required in order to finance the purchase price; Dueker told Shain to choose one of the Bank's approved appraisers. The chosen appraiser, Samuel L. Gill, appraised the Lodge to be worth $956,000.00 under "an income approach" and $1,123,000.00 under a "cost approach." Dueker thought Gill's "income approach" valuation was inaccurate, but he considered the "cost approach" valuation to be reasonable. The sale was concluded at the agreed price of $850,000.00 and closed on January 7, 1997.

In August of 2000, through the course of appealing a Butler County property tax assessment, Dueker testified that he became suspicious of the Lodge's original appraised value as determined by Gill. The chief appraiser for Butler County told Dueker that the Lodge was worth half of the value stated in Gill's appraisal. Dueker was told by appraiser Kent Sexton that he should not rely on the Gill appraisal. Dueker was of the opinion that the Millers, Gill, and Shain had conspired to sell the Lodge for much more than it was worth. Appellants filed suit in *Dueker I* alleging (1) fraudulent misrepresentation in Count I, (2) professional negligence against Gill in Count II, and (3) a conspiracy claim against Gill, Shain, the Millers, and the Bank in Count III. *Id.* at 664. Respondents all filed motions for summary judgment; the trial court granted Gill's motion for summary judgment on Counts I and II and granted summary judgment in favor of all Respondents on Count III. *Id.* The trial court denied Appellants' motion to file a First Amended Petition. *Id.* In that Amended Petition, Appellants tried to add a claim of fraudulent misrepresentation

against the Bank, Shain and the Millers. *Id.* Appellants specifically claimed trial court error in the denial of leave to file the First Amended Petition to add the count for fraudulent misrepresentation based upon the preparation of the spreadsheet which was presented to Dueker in September of 1996. *Id.*

In *Dueker I*, Appellants claimed in their first point on appeal that the trial court erred in granting summary judgment in favor of Gill because there were material issues of fact. *Id.* at 667. One of those reasons was whether Appellants relied on Gill's representations. *Id.* This Court noted that "Dueker's partner, Shannon, and Dueker's wife, Patricia A. Dueker, essentially testified they relied on Dueker's assessment of the worth and economic viability of the Lodge." *Id.* at 668 n. 4. We further noted "in their response to Gill's summary judgment motion, [Appellants] seem to concentrate more on the fact that they relied on the spreadsheet more than they do on the appraisal in making their decision to buy the Lodge." *Id.* at 668–69. Clearly, Appellants were claiming in *Dueker I* that they were induced to purchase the Lodge by misrepresentations of various parties. The question before this Court is whether Appellants may claim that the original spreadsheet, which was given to Dueker in September 1996, comprises a completely separate cause of action such as to survive a motion to dismiss this second lawsuit.

As noted, this Court affirmed the denial of the motion to file an amended petition with the admonition that "[w]hile [Appellants'] new claim is not based entirely on the facts and allegations in the original petition, the amended pleading has failed to include any facts unknown at the time the original pleading was filed on August 9, 2001." *Id.* at 672. We additionally stated:

While [Appellants] contend they had no evidence that the representations in the spreadsheet were not supported by the income and expenses of the Lodge, and that they could not support a count for fraudulent misrepresentation against [Respondents] until they received the Millers' tax returns through discovery, the record reveals otherwise.

Dueker was told upon receipt of the spreadsheet in September of 1996 that it was prepared by an employee of the Bank. Later, Dueker noted that when he received the Lodge's sales tax figures from the Missouri Department of Revenue, they were inconsistent with the income on the spreadsheet. Furthermore, [Appellants] were suspicious of wrongdoing on the part of all [Respondents] when they filed their initial petition. [Appellants] plead additional facts and allegations in their amended petition, but do not provide sufficient reasons for not including these facts and allegations in their initial petition filed two years previously and almost seven years since the events under consideration. It appears from the face of the record that only when faced with summary judgment did [Appellants] seek to amend their original petition.

*Id.* (internal citation omitted).

■ To reiterate, the second action commenced on March 7, 2005, contained the same claim that was in the Amended Petition, which was rejected by the trial court in *Dueker I.* The trial court in the case before us dismissed the action[1] because it violated the doctrines of *res judicata*, collateral estoppel, the rule against splitting a single cause of action and be- cause the substantive claims were barred by the statute of limitations. We find no error.

■ The elements of an action for fraudulent misrepresentation include "the hearer's ignorance of the falsity of the statement," the hearer's "reliance on the truth of the statement," and "the hearer's right to rely on the statement." *Id.* at 667. The spreadsheet was presented to Dueker in 1996. Assuming that the spreadsheet was a false representation, it is clear from the presentation of undisputed facts that Dueker was immediately distrustful of the income and expense spreadsheet and went to the Missouri Department of Revenue to acquire sales tax reports for the Lodge. He approached the Millers with this knowledge and accepted their explanation for the discrepancy between the sales report and the income and expense spreadsheet. At that point in 1996, he clearly knew that the income and expense spreadsheet was wrong. Suit must be filed within five years after the discovery of the fraud. § 516.120(5)[2]; *Berry v. Dagley,* 484 S.W.2d 182, 184 (Mo.1972). Suit was commenced in 2005, more than five years after the discovery of the fraud. The suit was properly dismissed as being outside the statute of limitations.

■ Furthermore, we believe the second suit was an impermissible splitting of a cause of action. Appellants argued in *Dueker I* that their claim "for fraudulent misrepresentation [against] Shain, the Millers and the Bank," the claim currently before us, "arose out of the same transaction as" *Dueker I.* *Dueker I,* 175 S.W.3d

---

1. When a party presents documents outside the pleadings, the trial court may treat the motion as a motion for summary judgment. *See Golden Valley Disposal, L.L.C. v. Jenkins Diesel Power, Inc.,* 183 S.W.3d 635, 638 (Mo. App. S.D.2006). The trial court properly treated this matter as a motion for summary judgment, as do we.

2. All references to statutes are to RSMo 2000, unless otherwise specified.

at 670. This Court agreed. *Id.* at 672–73. A claim is barred by a former judgment if it arises out of the same transaction. *Deatherage v. Cleghorn,* 115 S.W.3d 447, 456 (Mo.App. S.D.2003). As noted in *Deatherage,* actions are barred on "not only those issues on which the court in the former case was required to pronounce judgment, 'but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time.'" *Id.* at 455 (quoting *Chesterfield Village, Inc. v. City of Chesterfield,* 64 S.W.3d 315, 318 (Mo. banc 2002)). "[T]he claim extinguished includes all rights of the plaintiff to *remedies* against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Id.* at 456.

The judgment is affirmed.

PARRISH, J., and SCOTT, J., concur.