**Darrin MILLER and Mary J. Miller, Plaintiffs/Appellants,**

v.

**BIG RIVER CONCRETE, LLC, Jefferson County Ready–Mix, Inc., and Big River Concrete Co., Defendants,**

and

**John Wolf and W.R. Grace and Company, Defendants/Respondents.**

No. ED 75917.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 11, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 7, 2000.

Application for Transfer Denied April 25, 2000.

Steven W. Koslovsky, S. Diane Turpin, Ziercher & Hocker, P.C., St. Louis, for Appellant.

James B. James, Stephen D. Palley, Brown & James, P.C., St. Louis, for Respondent.

PAUL J. SIMON, Judge.

Plaintiffs Darrin and Mary Jo Miller, husband and wife, appeal the summary judgment granted in favor of defendants John Wolf (Wolf) and W.R. Grace & Company (Grace).

Plaintiffs contend that the trial court erred in granting summary judgment because: (1) genuine issues of material fact existed concerning whether Wolf knew or should have known that results of the "Swiss Hammer Test" would be provided to the Millers and whether they were entitled to rely on the representations made by Wolf and Grace; and (2) the lack of contractual privity between the Millers and Wolf and Grace is not dispositive of whether Wolf and Grace were negligent. We reverse and remand.

It is well-settled that when considering an appeal from summary judgment, we review the record in the light most favorable to the non-movant. *ITT Commercial Finance v. Mid–America Marine,* 854 S.W.2d 371, 376 (Mo.banc 1993). Our review is essentially de novo. *Id.* at 376. The criteria on appeal for testing the pro-

priety of summary judgment are no different from those which are employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The burden on a summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine dispute. *Id.* at 387.

A "defending" party may establish a right to judgment by showing: (1) facts that negate any one of the claimant's elements facts; (2) that the non-movant has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of the facts necessary to support the movant's properly pleaded affirmative defense. *Id.* at 381.

The non-movant must show by affidavit, depositions, answer to interrogatories, or admissions on file, that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed. *Id.* at 381. A "genuine issue" exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. *Id.* at 382. A "genuine issue" is a dispute that is real, not merely argumentative, imaginary or frivolous. *Id.*

The record, viewed in the light most favorable to the plaintiffs, reveals that they purchased a lot to construct a home. Darrin Miller has experience in the construction field and acted as general contractor on the construction of the home. Plaintiffs hired ET Concrete to pour the foundation, which ordered concrete from Big River Concrete LLC (Big River) and Jefferson County Ready Mix, Inc (Ready Mix). In the course of pouring the foundation, ET Concrete noticed that the concrete was not of the proper consistency and contained significant amounts of debris. After receiving assurances from Big River and Ready Mix, ET Concrete proceeded with completion of the foundation.

Subsequently, plaintiffs noticed that portions of the foundation had begun to crumble and disintegrate.

Plaintiffs and Cricket Whaley, the owner of Big River and Ready Mix, agreed that the concrete should be tested. Big River asked Wolf, a concrete salesman for Grace and a civil engineer with a degree from the University of Missouri at Rolla, to test the strength of the concrete by performing the "Swiss Hammer Test" on the foundation. Big River was a customer of Grace and the service was performed by Wolf gratuitously, as a customer service. Wolf was informed that he was to observe the concrete at the request of a third party, that the foundation was part of a residential construction belonging to plaintiffs and that plaintiffs wanted to be present at the testing.

Big River informed Wolf that the foundation he was testing was 10 days old, when it was in fact about 20 days old. Wolf informed Big River that the test was most accurate after 28 days, which is the curing time for concrete and that the test would not be a particularly accurate indication of the strength of the concrete. Big River insisted that Wolf perform the test anyway.

Wolf performed the "Swiss Hammer Test," without plaintiffs being present and submitted a letter to Cricket Whaley with the results. The letter, titled "Swiss Hammer strength tests at Miller [Plaintiffs] Residence," stated:

> "Tests were conducted on 9–18–96 when concrete was approximately 10 days old. Tests were run at six locations. Indicated strengths were in a range of 2000 to 2200 PSI, which would project a 28 day strength in excess if 2500 PSI. Please call if you have any questions."

BOCA requirements, or building code requirements, in Jefferson County for plaintiffs' residence are 2500 PSI after curing of the concrete.

Big River telephoned plaintiffs and informed them that the "Swiss Hammer

Test" had been performed on the foundation of their home and that the foundation was "okay." Big River faxed a letter to the plaintiffs which stated that the results of Wolf's test indicated that the strength of the concrete would endure without significant distress throughout the service of the residence. Big River attached a copy of the letter to Cricket Whaley reporting the test results prepared by Wolf.

Plaintiffs had ceased construction on the residence until the results of the "Swiss Hammer Test" were received. After receiving the report and talking with Big River, plaintiffs resumed construction of the residence, adding a sub-floor, exterior walls and some of the interior walls. Subsequently, plaintiffs again became concerned about the strength of the concrete and contacted Wolf directly.

Thereafter, plaintiffs hired SCI to retest the foundation. It conducted a "compressive strength test," which is generally considered by experts in the field to be more reliable than the "Swiss Hammer Test." As a result of the tests, the foundation was found to be inadequate and below the BOCA requirements. Plaintiffs again ceased construction, except to protect the sub-floor and walls from the elements and filed this action.

Plaintiffs filed their Second Amended Petition naming as defendants Big River, Ready Mix, Wolf and Grace. Counts I and II alleged a breach of the implied warranty of fitness and breach of the implied warranty of merchantability, respectively, by Big River and Ready Mix. Counts III and IV alleged negligent misrepresentation and negligence, respectively, by Wolf and Grace.

Wolf and Grace filed their motion for summary judgment alleging that there was no genuine dispute of material fact and that they were entitled to a judgment as a matter of law on the negligent misrepresentation and negligence counts because: (1) plaintiffs did not justifiably rely on the test in that Darrin Miller, who was experienced in construction, indicated that he did not consider the test accurate; (2) Wolf was not in privity with plaintiffs, nor was he aware that Big River intended to supply the information to plaintiff; and (3) plaintiffs' damages claim was for purely economic loss.

Plaintiffs filed a response, alleging genuine issues of material fact, including whether: (1) plaintiffs relied upon the results of the Swiss Hammer test in proceeding with construction; (2) Wolf and Grace were negligent in conducting the "Swiss Hammer Test;" (3) Wolf and Grace knew or should have known that plaintiffs would rely on their testing and conclusion in deciding whether to accept the concrete delivered by Big River and Ready Mix and continue construction or replace the foundation; (4) it was reasonable for plaintiffs to rely on representations made by Wolf and Grace; and (5) Darrin Miller's general knowledge of the "Swiss Hammer Test," while not being trained in how to conduct the test, and his concerns about the test are sufficient to prevent a finding that plaintiffs relied upon the results of the test conducted by an expert, Wolf, an engineer. In support of their response, plaintiffs filed exhibits including the letter from Wolf containing the results of the Swiss Hammer test, the depositions of Darrin Miller, Wolf, and Cricket Whaley, and the affidavit of Darrin Miller.

The trial court granted Wolf's and Grace's motion for summary judgment as to Counts III and IV, finding that "there was no justifiable reliance by Plaintiff [Darrin] on any action or assertion of Defendants Wolf or W.R. Grace & Co., nor was there any privity of contract between Plaintiffs and these Defendants." Counts I and II against Big River and Ready Mix continued to trial. The jury returned verdict in favor of plaintiffs for the sum of $50,000.00 against Big River but not Ready Mix. Judgment was entered on the verdict and no appeal was taken from that judgment.

In their first point, plaintiffs contend that the trial court erred in granting summary judgment in favor of Wolf and Grace because genuine issues of material fact existed concerning whether plaintiffs were entitled to rely upon the representations made by Wolf and Grace and whether Wolf knew or should have known that the results of the "Swiss Hammer Test" would be provided by Big River and Ready Mix to plaintiffs. Wolf and Grace argue that the motion was properly granted as to the claim for negligent misrepresentation because the evidence shows that plaintiffs doubted the reliability of the test and thus did not justifiably rely on the tests and further Wolf and Grace did not know that the test results would be relied upon by plaintiff. They also argue that the motion was properly granted as to plaintiffs' claim for negligence because Wolf and Grace owed no duty to plaintiffs as a matter of law because of a lack of privity and further because plaintiffs' claims were for purely economic loss.

To state a claim for negligent misrepresentation, plaintiffs must plead facts that establish: (1) speaker supplied information in the course of his business or because of some other pecuniary interest; (2) due to speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) listener justifiably relied on the information; and (5) that as a result of listener's reliance on the statement, he/she suffered a pecuniary loss. *Colgan v. Washington Realty Co.*, 879 S.W.2d 686, 689 (Mo.App. E.D.1994).

Wolf and Grace contend that summary judgment was properly granted because plaintiffs failed to establish that the statements by Wolf and Grace were false, they intentionally provided the information for the guidance of a limited group of persons in a particular business transaction and plaintiffs justifiably relied on the information.

Here, genuine issues of material fact exist as to the falsity of the information. The letter stated that the strengths at the time of the test were in a range of 2000 to 2200 PSI, which would project a 28 day strength in excess of 2500 PSI, the BOCA requirement, however a later test showed the concrete to be less than BOCA requirements. This leaves questions of fact for the jury as to the accuracy or falsity of the first and second tests.

Similarly there is an issue of fact as to whether Wolf and Grace intentionally provided the information for the guidance of a limited group of persons in a particular business transaction. Privity is not an element of the tort of negligent misrepresentation. *B.L. Jet Sales, Inc. v. Alton Packaging*, 724 S.W.2d 669, 672 (Mo.App. 1987). Rather, plaintiffs must establish that they were part of a limited group, for whose guidance the information was provided. As evidenced by his deposition and the letter to Cricket Whaley, Wolf was aware that the test was being performed at the request of a "third party" and that plaintiffs were the owners of the tested foundation. Thus, there is sufficient evidence to raise a genuine issue as to a material fact, i.e. were plaintiffs part of the limited group for whom the information was intended to guide.

Finally, there is a genuine issue as to whether plaintiffs reasonably relied upon the representations of Wolf and Grace. The reasonableness of appellant's reliance is normally an issue of fact, a matter for the jury's determination. *Frame v. Boatmen's Bank of Concord Village*, 824 S.W.2d 491, 493 (Mo.App. E.D. 1992) (appeal after remand citing *Frame v. Boatmen's Bank of Concord Village*, 782 S.W.2d 117, 123–124 (Mo.App. E.D.1989)).

Here, plaintiffs have established that Darrin Miller, although experienced in construction, had only poured three to five foundations. Darrin Miller was not expe-

rienced in the use of the "Swiss Hammer Test," although he knew of it and had questions about its accuracy. Plaintiffs, along with ET Concrete, were unsure of the strength of the foundation, but decided that it was necessary for an expert to test it to determine its strength. Plaintiffs ceased construction awaiting the results of Wolf's test and, after receiving those results, resumed construction and then again ceased construction. Plaintiffs have raised a genuine issue of material fact as to their reliance upon the representations made by Wolf and Grace. Plaintiffs' point is well taken.

■ In their second point, plaintiffs contend that the trial court erred in granting summary judgment on their negligence claim because the lack of privity is not dispositive. Historically, there are two underlying policy reasons not to impose liability on defendants not in privity with third parties: (1) avoidance of unlimited liability to an unlimited number of persons and (2) avoidance of burdening those who contract with obligations they would not voluntarily assume. *Chubb Group of Ins. Companies v. C.F. Murphy & Associates, Inc.*, 656 S.W.2d 766 (Mo.App. W.D.1983).

■ In certain cases, we have held that that a third party, although not in privity, has a claim for the alleged negligence of a professional who renders an opinion upon which the third person relies to its detriment. *Westerhold v. Carroll*, 419 S.W.2d 73, 81 (Mo.1967). The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to him; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to defendant's conduct; and (6) the policy of preventing future harm. *Id.* Each and every one of the above elements are not absolutely necessary to authorize an action to be maintained. *Id.* Here, there is evidence to support a finding that Wolf knew the results would be relied upon by plaintiffs and could foresee the harm to plaintiffs if the results were inaccurate. Similarly, plaintiffs have produced evidence to show that they were injured and that the injury was cause by their reliance. As a result, we find that no privity need be demonstrated.

■ Finally, we address Wolf's and Grace's point that plaintiffs damages constitute purely economic loss and are therefore not recoverable pursuant to *Fleischer v. Hellmuth, Obata & Kassabaum*, 870 S.W.2d 832 (Mo.App. E.D.1993). If a duty to plaintiff exists, the next question to be resolved is the type of injury for which liability attaches. *Id.* Liability is similarly premised on whether the injury was foreseeable and within the policy considerations of avoiding both unlimited liability and the overburdening of those who assume contractual responsibilities and turns on the nature of plaintiffs' injury. *Id.* In *Chubb*, 656 S.W.2d at 776, the Western District found actionable a claim for negligent interference with a tenant's right to use and enjoy a leasehold interest, despite the characterization of defendants of plaintiff's injury as a "mere loss of a business expectation" or "loss of a void oral contract". *Id.* at 776. The court rejected defendant's characterization due to the existence of the lease, a recognized property interest, and noted that "extending liability would not expose defendants to unlimited liability to all establishments which may have suffered some loss of business as a result of the collapse of the roof." *Id.* Similarly, in this case, plaintiffs had a recognized property interest and their property was the only property subject to Wolf's testing. Further, extending liability would not expose Wolf and Grace to unlimited liability as plaintiffs' injuries were foreseeable. Defendant's argument is without merit.

JUDGMENT REVERSED AND RE-MANDED.

GARY M. GAERTNER, P.J. and JAMES R. DOWD, J., concur.