Galen RICHEY, Respondent,

v.

Catherine M. PHILIPP a/k/a Catherine M. Philipp–Leatz, f/k/a Cathy Philipp, In her Individual Capacity and as an Agent for American Family Mutual Insurance Company,

and

American Family Mutual Insurance Company, Appellants.

No. WD 68064.

Missouri Court of Appeals, Western District.

March 4, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 29, 2008.

Application for Transfer Denied Aug. 26, 2008.

John E. Franke, William E. Quirk, Kansas City, MO, for Appellants.

Brian F. McCallister, Christopher J. Lawler, Kansas City, MO, Steven B. Garner, Springfield, MO, for Respondent.

Before VICTOR C. HOWARD, C.J., LISA WHITE HARDWICK, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

Galen Richey was seriously injured when he fell from the roof of his sister's house while attempting to remove a large tree limb. He sued his sister's insurance provider, American Family Mutual Insurance Company, and Catherine M. Philipp, the insurance agent that procured the American Family homeowner's policy on behalf of Richey's sister. Richey sought damages for the bodily injuries he sustained as a result of the fall and alleged that Philipp and American Family made negligent misrepresentations concerning the coverage provided by his sister's insurance policy or were negligent by failing to submit the insurance claim in a timely manner. According to Richey, Philipp and American Family either told Richey's sister that her homeowner's policy did not cover tree removal when in fact it did or they did not submit the claim for tree

removal submitted by Richey's sister within the time requirements established by American Family. A jury awarded Galen Richey $12,682,500 in actual damages, and Philipp and American Family appeal. They assert that the circuit court erred in overruling their motions for directed verdict and for judgment notwithstanding the verdict because Richey failed to make a submissible case on his claims for negligent misrepresentation and for negligence. They also assert that the circuit court erred in giving the jury certain verdict directing instructions. We affirm.

On July 19, 2000, a large limb broke off a tree and landed on the roof of the house of Richey's sister, Brenda Bricker. Bricker telephoned her insurance agent, Philipp, and asked whether or not her homeowner's insurance would cover removal of the limb. According to Bricker, Philipp told her that no coverage existed for the limb removal. A few days later, Bricker again telephoned Philipp about removing the limb from her roof, and Philipp again said that no coverage was provided for tree removal under the homeowner's policy.[1]

Sometime later, Bricker asked Richey if she could borrow his chain saw to remove the limb. Bricker told Richey that her insurance agent had told her that her policy did not cover tree removal. Richey asked his sister to wait a few days to remove the limb and promised that he would help her. On August 8, 2000, Richey went to his sister's house to attempt to remove the limb. While removing some of the debris from the roof, the tree limb unexpectedly rolled and knocked Richey

off the roof. As a result of the fall, Richey suffered a spinal cord injury and was rendered a complete paraplegic.

Richey sued Philipp and American Family for fraudulent misrepresentation, negligent misrepresentation, breach of fiduciary duty, and negligence. After a trial on Richey's claim for personal injury, Richey's claims were submitted to the jury based upon negligent misrepresentation and negligence. The jury assessed ninety-five percent fault to Philipp and American Family and five percent fault to Richey and found that Richey's damages totaled $13,350,000. The circuit court entered its judgment for Richey in the amount $12,682,500, which accounts for the five percent reduction in the damage award due to the percentage of fault assessed by the jury against Richey. Philipp and American Family appeal.

In their first point on appeal, Philipp and American Family contend that the circuit court erred in denying their motions for directed verdict and for judgment notwithstanding the verdict because Richey failed to make a submissible case on either negligence or negligent misrepresentation. In particular, they claim that, because Richey's claims were based upon the wrongful denial of insurance coverage, Missouri law precludes any tort recovery under such circumstances. We disagree.

The standards of review for the denial of a motion for judgment notwithstanding the verdict and the denial of a motion for a directed verdict are essentially the same. *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 456 (Mo. banc

---

1. Philipp said that Bricker telephoned her only once and that Bricker did not telephone her until August 7, 2000. Philipp said, "[Bricker] called me and told me a tree had fallen and that the tree was still on her house. And I remember telling her just like I tell everyone that if a tree falls on your home if there is damage to the home we will pay to have the tree removed. If there's no damage we will not. We will turn the claims in. An adjustor will contact you and he will determine." Philipp said that she would have told Bricker that an insurance adjustor would call her within 48 hours.

2006). In reviewing the circuit court's judgment, we view the evidence in the light most favorable to the verdict and give the prevailing party all reasonable inferences from the verdict and disregard unfavorable evidence. *Id.* at 456–57. "[We] will reverse the jury's verdict for insufficient evidence only where there is a 'complete absence of probative fact' to support the jury's conclusion." *Seitz v. Lemay Bank & Trust Co.,* 959 S.W.2d 458, 461 (Mo. banc 1998) (footnote omitted).

■ Philipp and American Family assert that no tort remedy exists in Missouri for breach of an insurance contract and that the only remedy for wrongful denial of insurance coverage is a contract action. In support of their contention they rely on *Overcast v. Billings Mutual Insurance Co.,* 11 S.W.3d 62 (Mo. banc 2000), and *Wood v. Foremost Insurance Co.,* 477 F.3d 1027 (8th Cir.2007).

In *Overcast,* a fire destroyed the plaintiff's home, and the insurer refused payment on the ground that the insured had committed arson. *Id.* at 64–65. The plaintiff sued for breach of the insurance contract and for defamation based on the insurer's denial letter claiming arson. *Id.* at 64. The Supreme Court noted that "[w]hen an insurance company wrongfully refuses payment of a claim to its insured, the company has simply breached its contract" and that "[n]o tort claim has supplanted or supplemented the basic contract claim and remedy where an insurance company wrongfully refuses to pay a loss incurred by its own insured." *Id.* at 67. The Court determined, however, a tort claim may be brought against the insurer based on a bad faith refusal to settle a claim brought by a third party and when a claim is not based on the insurer's refusal to pay but is "based on conduct quite distinct from conduct that merely constituted a breach of contract." *Id.* at 68.

The Court found that the insured's tort claim for defamation was not dependent on the elements of the contract claim and that the denial of coverage was not part of the insured's defamation claim. *Id.* at 68 n. 6. For these reasons, the Court allowed the insured's defamation claim to proceed.

In *Wood,* the insurer allegedly failed to pay fully for property damage to an insured's roof caused by a tornado. *Wood,* 477 F.3d at 1028. In attempting to deal with the damage, the insured climbed onto the roof, fell, and injured himself. *Id.* The insured sued the insurer on a contract theory attempting to recover for his bodily injuries under the terms of the insurance contract. *Id.* at 1029. The Eighth Circuit Court of Appeals cited *Overcast* for the proposition that an insurance company's denial of coverage is actionable only as a breach of contract. *Id.* The court held that the insured's fall was not reasonably foreseeable when the insurance contract was formed and, therefore, the insured could not recover for his personal injuries. *Id.* at 1030.

The problem with Philipp's and American Family's reliance on *Overcast* and *Wood* in support of their contention that no tort remedy exists in Missouri for breach of an insurance contract and that the only remedy for wrongful denial of insurance coverage is a contract action is that they fail to appreciate the fact that Richey is not an insured and he is not seeking to recover a loss under a contract of insurance. Richey is a third party and a complete stranger to the insurance contract between Bricker and American Family. He cannot be limited in his remedies by a contract to which he was not a party for any injuries he may have suffered as a result of actions by an insurance company or an insurance agent.

■ Moreover, Missouri recognizes negligent misrepresentation as an actionable

tort and has recognized the right of a third party to sue an insurance company for negligent misrepresentation. *Vickers v. Progressive Cas. Ins. Co.*, 979 S.W.2d 200, 203–04 (Mo.App.1998). The submissibility of a misrepresentation claim depends not upon the contract but upon the establishment of all the elements of the misrepresentation. *See Essex v. Getty Oil Co.*, 661 S.W.2d 544, 549 (Mo.App.1983). Richey's claim is not based upon any insurance contract; it merely relates to a contract in that Philipp allegedly misrepresented that Bricker did not have insurance coverage for removal of the tree limb. The fact that the alleged misrepresentation made by Philipp in this case was that Bricker did not have insurance coverage for removal of the tree limb does not foreclose Richey's claim for negligent misrepresentation.

In their next point, Philipp and American Family assert that the circuit court erred in denying their motions for directed verdict and for judgment notwithstanding the verdict because the evidence was insufficient to establish that their conduct was the proximate cause of Richey's injuries. According to Richey, Philipp either negligently handled Bricker's claim for tree removal or negligently misrepresented to Bricker that no insurance coverage existed for tree removal. Richey claims that, but for this negligence, he would have not undertaken the task of removing the tree on his sister's behalf and, therefore, would not have been injured.

■■ To prevail on his claim for negligence or negligent misrepresentation, Richey had to establish that Philipp and American Family's conduct directly caused or directly contributed to cause damage to Richey. To make a submissible case for negligence, "the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defen-

dant's failure proximately caused injury to the plaintiff." *Lopez v. Three Rivers Elec. Coop., Inc.*, 26 S.W.3d 151, 155 (Mo. banc 2000). Moreover, to make a submissible case for negligent misrepresentation, the plaintiff must show that he or she relied on a representation, which proximately caused the damages claimed. *Faust v. Ryder Commercial Leasing & Servs.*, 954 S.W.2d 383, 393 (Mo.App.1997).

■■ To establish causation, a plaintiff must prove both causation in fact and proximate cause. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 865 (Mo. banc 1993); *Heffernan v. Reinhold*, 73 S.W.3d 659, 664 (Mo.App.2002). "A defendant's conduct is the cause in fact of a plaintiff's injuries where the injuries would not have occurred 'but for' that conduct." *Heffernan*, 73 S.W.3d at 664; *Callahan*, 863 S.W.2d at 860–61. In other words, Richey had to prove that, but for some action by Philipp or American Family, he would not have been injured. As the *Callahan* court explained:

> Any attempt to find liability absent actual causation is an attempt to connect the defendant with an injury or event that the defendant had nothing to do with. Mere logic and common sense dictates that there be some causal relationship between the defendant's conduct and the injury or event for which damages are sought.

*Callahan*, 863 S.W.2d at 862.

■ "Once actual causation has been established, the issue becomes one of legal cause—also known as proximate cause—that is, whether the defendant should be held liable because the harm is the reasonable and probable consequence of the defendant's conduct." *City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110, 114 (Mo. banc 2007); *Calla-*

*han*, 863 S.W.2d at 865. In regard to proximate cause, the *Callahan* court said:

Proximate cause requires something in addition to a "but for" causation test because the "but for" causation test serves only to exclude items that are not causal in fact; it will include items that are causal in fact but that would be unreasonable to base liability upon because they are too far removed from the ultimate injury or damage.

. . . .

Missouri, like many other states, has not applied a pure foreseeability test; we have generally said that the injury must be a reasonable and probable consequence of the act or omission of the defendant. This is generally a "look back" test but, to the extent it requires that the injury be "natural and probable," it probably includes a sprinkling of foreseeability. To the extent the damages are surprising, unexpected, or freakish, they may not be the natural and probable consequences of a defendant's actions.

*Callahan*, 863 S.W.2d at 865 (footnote and citations omitted). We, therefore, determine proximate cause by looking back, after the injury or damage has occurred, and examine whether the injury is a reasonable and probable consequence of the defendant's conduct. *Heffernan*, 73 S.W.3d at 665.

In regard to foreseeability as it relates to proximate cause, this court explained in *Robinson v. Missouri State Highway & Transportation Commission*, 24 S.W.3d 67, 78 (Mo.App.2000):

" '[F]rom the essential meaning of proximate cause arises the principle that in order for an act to constitute the proximate cause of an injury, *some* injury, if not the precise one in question, must have been reasonably foreseeable.' " *Hansen v. James*, 847 S.W.2d

476, 481 (Mo.App.1992) (quoting *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo.banc 1990) (citations omitted)). "Foreseeability is not a matter of mathematical certainty. No event is entirely foreseeable." *Shannon v. Wal–Mart Stores, Inc.*, 974 S.W.2d 588, 591 (Mo. App.1998). As such, the test for proximate cause "is not whether a reasonably prudent person would have foreseen the particular injury, but whether, after the occurrences, the injury appears to be the reasonable and probable consequence of the act or omission of the defendant." *Simonian [v. Gevers Heating & Air Conditioning, Inc.]*, 957 S.W.2d [472,] 475 [(Mo.App.1997)]. "It is only necessary that the party charged knew or should have known there was an appreciable chance some injury would result." *Jones [v. Trittler]*, 983 S.W.2d [165,] 168 [(Mo.App.1998)]. "The defendant's negligence need not be the sole cause of the injury; it must be one of the causes without which the injury would not have occurred." *Id.* "It is sufficient that it be one of the efficient causes thereof, without which the injury would not have occurred." *Simonian*, 957 S.W.2d at 475.

Foreseeability, therefore, "refers to whether a defendant could have anticipated a particular chain of events that resulted in injury or the scope of the risk that the defendant should have foreseen." *Lopez*, 26 S.W.3d at 156.

In this case, Philipp and American Family assert that the evidence does not support a finding that their conduct was the proximate cause of Richey's injuries. Their contention, however, is without merit because Philipp admitted that her conduct would likely injure a person like Richey. Richey established "but for" causation and proximate causation through Philipp's own testimony. Richey's getting on the roof

and attempting to remove the tree limb is the exact action which Philipp said that she knew would likely occur and that would lead to the type of injury which did occur if she misrepresented insurance coverage to an insured or failed to timely submit an insurance claim. Philipp's testimony, therefore, shows that she anticipated the particular chain of events that resulted in Richey's injuries. She admitted that Richey's injuries were a reasonable and probable consequence of her misrepresentation to Bricker concerning the insurance coverage and of her failure to promptly turn in the claim.

In her deposition testimony that was admitted into evidence at trial, Philipp said:

Q. . . . Would it be fair to say that you don't want your insureds getting on their roofs to remove limbs themselves?

A. Yes, sir.

Q. And based upon your knowledge of just how people are, you know if the claim isn't covered and they don't have money they're likely to do it themselves, right?

. . . .

[A.] Yeah, probably.

. . . .

Q. Now, you indicated that you wouldn't want an insured to get up and try to take care of the tree themselves. Why is that? Just the dangers of being on a house with a chain saw?

A. Just the danger of being on a house.

Q. And from your dealings in insurance through the years you're aware there's specialized companies that do tree removal?

A. Yes, sir.

Q. Companies that are trained to work at those heights with chain saws and whatnot?

A. Yes, sir.

Q. And those are the people that should be doing it?

A. Yes, sir.

Q. You would be concerned about injury if an untrained person attempted to do it?

A. Yes, sir.

. . . .

Q. As you understand your job and your duties, how soon after you received word of a claim should you report that?

A. Immediately.

Q. And by immediately, would that be the same day?

A. Oh, yes.

Q. Especially a claim that a big tree is laying on somebody's home?

A. Yes.

. . . .

Q This type of an incident is why I take it you would want people to know whether they have insurance that will cover this removal?

. . . .

[A.] Well, yeah, I want them to know not to go on the roof.

Q. . . . I assume one of the reasons you tell them, and should tell them that there will be payment to remove is so they won't try to do it themselves?

A. Right. So they won't try to go up there and take care of it.

Q. Exactly. Because—because what happened here can happen if they try to take care of it themselves, correct?

. . . .

[A.] Yes, sir.

Philipp and American Family did not object to the admission of Philipp's deposition testimony into evidence.

Moreover, at the trial, Philipp testified:

Q. As I understand what Ms. Bricker had purchased from you, there were two types of protection, were protection to the house?

A. Yes, sir.

Q. And protection to them that would prevent Mrs. Bricker or a family member getting up on the house to have to cut a tree off, correct?

A. That's the same coverage, yes, sir.

Q. Right. It serves two distinct purposes: One, it protects the home and its contents, and the other protects the individual for having to get up and take risks that a professional should be doing, correct?

A. Yes, sir.

Q. So the coverage that she bought and paid for would hire a professional . . . that would know risk and know how to address it, correct?

A. Yes, sir.

. . . .

Q. Because that protection—and you told me if an individual doesn't have coverage, you know they're liable to get up and cut the tree off themselves and their family members, right?

A. Yes, sir.

Q. And you know that coverage is designed to prevent exactly what occurred here, correct?

A. Yes, sir.

. . . .

Q. . . . You know if you tell an insured there is no coverage for tree removal, you can expect them to act on that, correct?

A. Yes, sir.

Q. If you tell them there's no coverage, they're going to get up on their roof with people in their family and try to get it off, don't you?

A. Am I positive somebody would do that, sir?

Q. You know that is certainly a foreseeable and expected result of telling them there's no coverage?

A. Possibly.

Q. And you know that would be believed by the insured because they rely upon you, correct?

A. Yes.

Q. And you know that they're going to communicate that to people in their close family, correct.

A. Correct.

Q. And so when you know if you tell somebody that there won't be coverage, that could be relied upon by a small group of family members, correct?

A. Correct.

Q. Including people like Mr. Richey, correct?

A. Correct.

Generally, the issue of foreseeability and causation is a contested issue, but in this case it was not. We need not decide whether or not Richey's injuries were reasonably foreseeable because Philipp testified that she knew that there was an appreciable chance some injury would result from her conduct.

Philipp and American Family rely on *Elder v. Allstate Insurance Co.*, 341 F.Supp.2d 1095 (D.Minn.2004), in support of their contention that no proximate cause exists in this case. In *Elder*, an insured's automobile broke through ice on a frozen lake and sank. The insured notified Allstate, and Allstate erroneously informed him that his insurance would not pay for the car removal. The insured then attempted to remove the car from the lake and was killed. The insured's family sued Allstate for negligence and breach of contract alleging that the insured's death was a direct result of Allstate's failure to pro-

vide coverage. *Id.* at 1097. Allstate moved for summary judgment, and the Minnesota District Court granted summary judgment concluding that the insured could not establish proximate cause. *Id.* at 1102–03. The *Elder* court noted, however, that Minnesota—unlike Missouri—has rejected the "but for" analysis for causation. *Id.* at 1103. Moreover, in *Elder,* Allstate did not admit that its actions proximately caused the insured's death. The *Elder* case, therefore, is not instructive to the resolution of this case.

Philipp and American Family assert that this case is "a classic case where, as the Missouri Supreme Court noted in *Callahan,* the damages are 'surprising, unexpected, or freakish' and involved 'an extended scenario involving multiple persons and events with potential intervening causes[.]' " *See Callahan,* 863 S.W.2d at 865. The damages in this case were not "surprising, unexpected, or freakish" because Philipp's own testimony establishes that they were not. Nor can we, in light of Philipp's admissions, say that Richey's getting on the roof and attempting to remove the tree limb was a superseding cause because Philipp agreed that such would likely occur if an agent misrepresented coverage or failed to timely submit a claim. Given Philipp's admissions, the circuit court would have erred in directing the verdict or granting judgment notwithstanding the verdict in light of the evidence establishing foreseeability and causation.

■ In their third point, Philipp and American Family contend that the circuit court erred in denying their motions for directed verdict and for judgment notwithstanding the verdict on Richey's negligence claim because the evidence was insufficient to establish that they owed a duty to Richey.[2] We disagree.

■ "In any action for negligence, the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury . . . ."[3] *Lopez,* 26 S.W.3d at 155. Philipp and American Family assert that any duty that they may have had in this case arose under Bricker's insurance contract and was owed to Bricker only. They claim that the insurance policy issued to Bricker affords no basis for Richey to re-

2. Richey's case was submitted to the jury with two separate verdict-directing instructions and a general verdict form. If we determine that Richey failed to make a submissible case on either one of his two theories, we would have to remand the case for a new trial. "Where two or more theories of liability are submitted to the jury and one of the theories of submission is found to be defective, a new trial must be granted if the jury returned a general verdict of liability." *Coggins v. Laclede Gas Co.,* 37 S.W.3d 335, 342 (Mo.App. 2000); *see also M.C. v. Yeargin,* 11 S.W.3d 604, 611 (Mo.App.1999), *abrogated on other grounds by State Bd. of Registration for Healing Arts v. McDonagh,* 123 S.W.3d 146 (Mo. banc 2003).

3. In regard to this negligence action, the jury was instructed:

Your verdict must be for plaintiff against defendants whether or not plaintiff was partly at fault if you believe:

First either:

Defendant [Philipp] told Brenda Bricker in July 2000 that she did not have coverage for removal of a large tree limb that had fallen on her house, or

Defendant [Philipp] was notified in July 2000 that a large tree limb had fallen on Brenda Bricker's home and did not submit Brenda Bricker's claim to American Family Mutual Insurance Company within the time requirements established by American Family Mutual Insurance Company, and

Second, [Philipp], in any one or more of the respects submitted in paragraph, First, was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause damage to plaintiff.

cover for his bodily injuries and that they had no duty to protect Richey or to guard him against injury while engaged in work on Bricker's roof. A duty to exercise care, however, may arise due to a contractual relationship, but it also "may be imposed by common law under the circumstances of a given case." *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. banc 1976).

■■■■ "Under the principles of general negligence law, whether a duty exists in a given situation depends upon whether a risk was foreseeable. In the absence of a particular relationship recognized by law to create a duty,[4] the concept of foreseeability is paramount in determining whether a duty exists." *Lopez*, 26 S.W.3d at 156. "Foreseeability for purposes of establishing whether a defendant's conduct created a duty to a plaintiff depends on whether the defendant should have foreseen a risk in a given set of circumstances. *Id.* (citing *Zuber v. Clarkson Constr. Co.*, 363 Mo. 352, 251 S.W.2d 52, 55 (1952))." " 'A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury.' " *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 257 (Mo. banc 2002) (quoting *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 62 (Mo. banc 1988)). Duty " 'is generally measured by whether or not a reasonably prudent person would have anticipated danger and provided against it.' " *L.A.C.*, 75 S.W.3d at 257 (quoting *Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1985)).

Moreover, in *Lough by Lough v. Rolla Women's Clinic, Inc.*, 866 S.W.2d 851 (Mo. banc 1993), the Missouri Supreme Court acknowledged that "[a]ny question of duty depends upon a calculus of policy considerations" which include:

> "[T]he social consensus that the interest is worthy of protection; *the foreseeability of harm and the degree of certainty that the protected person suffered injury;* moral blame society attaches to the conduct; the prevention of future harm; considerations of cost and ability to spread the risk of loss; the economic burden upon the actor and the community."

*Id.* at 854 (emphasis added and citation omitted).

■■■ Philipp admitted that she had a duty to promptly turn in claims and to not misrepresent insurance coverage. She admitted that these duties existed to protect the insured and family members from getting on the roof and being injured while attempting to remove a tree limb. She further acknowledged that violation of these duties could result in injuries to an individual in the same manner that Richey was injured. Under the limited and rare circumstances of this case, the circuit court could not have directed a verdict or granted judgment notwithstanding the verdict given that Philipp and American Family admitted that they could foresee the risk of injury to a third party like Richey due to their failure to promptly turn in an insurance claim or due to their misrepresenting insurance coverage to an insured.

To the extent that Philipp and American Family rely on *Stitt by Stitt v. Raytown Sports Association*, 961 S.W.2d 927, 930 (Mo.App.1998), *Wilson v. St. Louis Area Council, Boy Scouts of America*, 845 S.W.2d 568, 573 (Mo.App.1992), and *Burns*

---

4. Philipp and American Family assert that courts have refused to impose a duty where there is no relationship between the plaintiff and the defendant. The Missouri Supreme Court, however, in Lopez specifically recognized that a duty might exist in the absence of a relationship if the risk was foreseeable. Lopez, 26 S.W.3d at 156.

*v. Black & Veatch Architects, Inc.*, 854 S.W.2d 450, 457 (Mo.App.1993), in support of their contention that they had no duty to protect Richey from harm because they had no control over the activity which presented the danger in this case, we are not persuaded. *Stitt* and *Wilson* stand for the proposition that, to impose a duty on an organization to protect its members against unreasonable and foreseeable dangers associated with an activity, the activity must be under the organization's control. *Stitt*, 961 S.W.2d at 931, and *Wilson*, 845 S.W.2d at 572–73. In *Burns,* the court held that " '[a] contractor is liable where he is in control of and has charge of the work and the dangerous condition is attributable to wrongful or negligent acts of his employees while the work is in progress.' " *Burns*, 854 S.W.2d at 457 (citation omitted). These cases have no application to this case.[5]

Further, Philipp had the ability to control the negligence that led to Richey's injuries as evidenced by her admission that she had a duty to promptly turn in claims and to not misrepresent insurance coverage. Further, she admitted that these duties existed to protect the insured and family members from getting on the roof and being injured while attempting to remove a tree limb. She, therefore, admitted that she had control over her conduct and control over her actions which she knew would likely cause injury. She admitted that, by misrepresenting insurance coverage or by not promptly turning in an insurance claim, she would be creating a risk of injury to the insured and family members.

■ "Foreseeability for purposes of establishing whether a defendant's conduct created a duty to a plaintiff depends on whether the defendant should have foreseen a risk in a given set of circumstances." *Lopez*, 26 S.W.3d at 156. Philipp said she did foresee some risk of injury to Richey in these circumstances, and, therefore, Richey is entitled to protection from that risk. "If the harm is particularly foreseeable, a duty will be recognized." *Millard v. Corrado*, 14 S.W.3d 42, 47 (Mo.App.1999).

Moreover, to the extent that Philipp and American Family are concerned that our holding regarding proximate cause and duty will "bring a sea change to Missouri law," we feel compelled to stress to Philipp, American Family, and future litigants that our holding is limited strictly to the circumstances of this case. This is an unusual case because proximate cause and duty were essentially uncontested. Proximate cause and duty were admitted by Philipp. The circuit court was merely presented with the case as tried by the parties, and, given the admissions by Philipp, it could not have directed a verdict or granted judgment notwithstanding the verdict in this case in regard to proximate cause or duty. Likewise, this court decides the issues presented on the record before it and does not make policy in an abstract setting despite Philipp's and American Family's argument that proximate cause is a "policy" determination to be made by the court.

In their fourth point, Philipp and American Family assert that that the circuit court erred in denying their motions for directed verdict and for judgment notwithstanding the verdict on Richey's negligent misrepresentation claim because the evidence was insufficient to establish that they made any representation to Richey.

5. American Family admitted that it had the ability to control Philipp's tortuous conduct in this case by admitting vicarious liability.

They also claim that Richey was not a person to whom any representations were reasonably intended to be directed. We disagree.

■■■ To make a submissible case of negligent misrepresentation for a pecuniary loss, Missouri law requires a plaintiff to establish:

> (1) [T]he speaker supplied information in the course of his or her business because of some pecuniary interest, (2) that was false, (3) without exercising reasonable care or competence in obtaining or communicating this information, (4) for the guidance of a limited group of persons in a particular business transaction, (5) and the listener justifiably relied on the information, (6) and, as a result, suffered a pecuniary loss.

*Collins v. Mo. Bar Plan*, 157 S.W.3d 726, 734 (Mo.App.2005). Restatement (Second) of Torts § 311 further provides that a person who negligently gives false information to another may also be liable for physical harm. That section provides:

> (1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results
>
> (a) to the other, or
>
> (b) to such third persons as the actor should expect to be put in peril by the action taken.

*See also Ligon Specialized Hauler, Inc. v. Inland Container Corp.*, 581 S.W.2d 906, 908 (Mo.App.1979) (court acknowledged Restatement (Second) of Torts § 311 but found that Restatement (Second) of Torts § 552 was more applicable in the matter before it). The Comments to the Restatement provide further guidance by noting:

> The rule stated in this Section finds particular application where it is a part of the actor's business or profession to give information upon which the safety of the recipient or a third person depends. . . . The rule is not, however, limited to information given in a business or professional capacity, or to those engaged in a business or profession. It extends to any person who, in the course of an activity which is in furtherance of his own interests, undertakes to give information to another, and knows or should realize that the safety of the person of others may depend upon the accuracy of the information.

Restatement (Second) of Torts § 311 cmt. b.

■■■ Philipp and American Family argue that any alleged misrepresentation that was made in this case was made to Richey's sister and not to him. They assert that it was undisputed at trial that Richey never had any personal communications of any kind with Philipp. Although such is true, the law does not require that the representation be made directly to Richey. "A recovery can be had for false representations made to another with the intent that they be communicated to a third person for the purpose of defrauding said third person." *Wilson v. Murch*, 354 S.W.2d 332, 337 (Mo.App.1962) (citing *Watson v. Crandall*, 7 Mo.App. 233 (Mo. App.1879)).

■■■ Indeed, under certain circumstances, " 'a third party, although not in privity, has a claim for the alleged negligence of a professional who renders an opinion upon which the third person relies to its detriment.' " *Dueker v. Gill*, 175 S.W.3d 662, 669 n. 7 (Mo.App.2005) (quoting *Miller v. Big River Concrete, LLC*, 14 S.W.3d 129, 134 (Mo.App.2000)). The *Miller* court outlined several policy considerations to be used in determining whether a defendant will be held liable to a third person not in privity, which include:

(1) [T]he extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to him; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to defendant's conduct; and (6) the policy of preventing future harm.

*Miller*, 14 S.W.3d at 134. It is unnecessary, however, to satisfy every one of the policy considerations before finding that a defendant will be liable to a third party not in privity. *Id.*

In this case, the first three policy considerations were satisfied by Philipp's testimony alone. She conceded that she knew that any misrepresentation that she made about insurance coverage to an insured could be communicated to and relied upon by members of the insured's family—including people like Richey. She said that, she knew if she misrepresented insurance coverage, Bricker and her family would be placed in danger because they would try to remove the tree themselves. Richey testified that he relied upon Philipp's representation that there was no insurance coverage and that he would not have been on his sister's roof if this misrepresentation had not been made. The admitted facts in this case establish a claim for negligent misrepresentation.

In their fifth point, Philipp and American Family assert that the circuit court erred in giving the jury, over their objection, the verdict directing instruction on Richey's negligent misrepresentation claim. They claim that the jury instruction misstated Missouri law in that it modified the M.A.I. definition of "ordinary care" to impose an impermissibly higher standard of care on them. We disagree.

"The question of whether or not a jury was properly instructed is a question of law." *Rice v. Bol*, 116 S.W.3d 599, 606 (Mo.App.2003). In this case, the jury instruction for negligent misrepresentation defined "ordinary care" as "that degree of care, skill and learning that an ordinarily careful and prudent person in defendants' business would use under the same or similar circumstances." Philipp and American Family assert, however, that the circuit court should have used their proffered definition of "ordinary care," which was the definition provided by M.A.I. 11.05. M.A.I. 11.05 defines "ordinary care" as "that degree of care than an ordinarily careful person would use under the same or similar circumstances."

At the time of this trial, no M.A.I. instruction existed for negligent misrepresentation. In 2007, M.A.I. 31.26 was adopted and set forth the jury instruction for negligent misrepresentation resulting in a pecuniary loss, but such instruction was not adopted until after the trial in this case. Further, *no instruction appears in M.A.I. for negligent misrepresentation that results in physical injury.* The comments to M.A.I. 31.26, however, note that Restatement (Second) of Torts § 311 sets forth a cause of action for negligent misrepresentation which results in physical injury. Thus, to the extent that Philipp and American Family contend that the circuit court was required to use the M.A.I.'s definition of "ordinary care," we are not persuaded. When an applicable M.A.I. instruction does not exist, Rule 70.02(b) requires either a non-M.A.I. instruction or a modified M.A.I. instruction. Moreover, "[m]odifications of MAIs as required by the facts of a particular case are not presumptively prejudicial merely because the MAI is not literally followed." *Taylor v. Associated Elec. Coop., Inc.*, 818 S.W.2d 669, 673 (Mo.App.1991).

Because no M.A.I. instruction existed for negligent misrepresentation or for "ordinary care" of an insurance professional, the circuit court gave the jury a negligent misrepresentation instruction patterned after an instruction proposed by the authors of the Missouri Practice series in the 2006 edition.[6] This Missouri Practice proposed instruction stated: "The phase 'ordinary care' as used in this instruction means that degree of care, skill and learning that an ordinarily careful and prudent expert[7] in defendant's business would use under the same or similar circumstances." 34 Robert A. Dierker & Richard J. Mehan, Missouri Practice: Personal Injury and Torts Handbook § 33.15 (2006 ed.).[8] Based upon the Missouri Practice proposed instruction, the circuit court instructed the jury in this case that "ordinary care" means "that degree of care, skill and learning that an ordinarily careful and prudent person in defendants' business would use under the same or similar circumstances."

 The circuit court did not err in instructing the jury that Philipp and American Family should be held to a professional standard of care. Indeed, "[a] professional standard of care is a professional duty unique to the profession under consideration" and should be "distinguished from the standard of care for an 'ordinary person[.]'" *Jones v. Kennedy*, 108 S.W.3d 203, 207 (Mo.App.2003). "When a person possesses knowledge or skill superior to that of an ordinary person, the law requires of that person conduct consistent with such knowledge or skill. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 32, at 185 (5th ed.1984)." *Bus. Men's Assurance Co. of Am. v. Graham*, 891 S.W.2d 438, 453 (Mo.App.1994). The differences between the standards of care for an ordinary person and a professional are: "An ordinary person has a duty to act as a reasonable person would act under the same or similar circumstances. Alternatively, a person providing professional services is under a duty to exercise such care, skill, and diligence as persons in that profession ordinarily exercise under like circumstances." *Jones*, 108 S.W.3d at 207 (citations omitted). "A professional person," therefore, "owes a client a duty of care commensurate with 'the degree of care, skill and proficiency commonly exercised by ordinarily skillful, careful and prudent professionals.'" *Bus. Men's Assurance*, 891 S.W.2d at 453 (quoting *Murphy v. A.A. Mathews*, 841 S.W.2d 671, 674 (Mo. banc 1992)). According to the *Jones* court, "insurance agents are held to a professional standard of care." 108 S.W.3d at 207.

 The instruction as submitted to the jury in this case, therefore, set forth

---

6. This section was amended in 2007 and no longer provides a definition of ordinary care.

7. The instruction given in this case replaced the word "expert" with the word "person." Such modification by the circuit court was appropriate and an improvement on the Missouri Practice proposed instruction. Because the instruction used the word "person," we need not determine whether the use of the term "expert" in the Missouri Practice proposed instruction is proper when dealing with a professional standard of care.

8. The Missouri Practice patterned its definition of "ordinary care" after M.A.I. 11.10, which contains a definition of "ordinary care" for negligence actions involving the manufacturers of certain products. M.A.I. 11.10 defines "ordinary care" as "that degree of care, skill and learning that an ordinarily careful expert in defendant's business would use under the same or similar circumstances."

the proper standard of care for an insurance professional. Insurance professionals are not "ordinary people" in regard to insurance matters. They have "a duty to exercise such care, skill, and diligence as persons in that profession ordinarily exercise under like circumstances." *Id.* The instruction, therefore, did not impose on Philipp and American Family a standard of care higher than that required by law.[9] Philipp, in handling inquiries about insurance coverage should exercise a "degree of care, skill and learning that an ordinarily careful and prudent person in defendants' business would use under the same or similar circumstances."

Finally, in their last point on appeal, Philipp and American Family assert that the circuit court erred in giving the jury, over their objection, the verdict directing instruction on Richey's negligence claim. They claim that the jury instruction misstated Missouri law in that it modified the M.A.I. definition of "negligent" and "negligence" to impose an impermissibly higher standard of care on them. We disagree.

Again, "[t]he question of whether or not a jury was properly instructed is a question of law." *Rice*, 116 S.W.3d at 606. In this case, the jury instruction for negligence defined the terms "negligent" or "negligence" as "the failure to use that

degree of skill and learning ordinarily used under the same or similar circumstances by a person in defendants' business." Philipp and American Family assert, however, that the circuit court should have used their proffered definition of "negligence," which was the definition provided by M.A.I. 11.02(1). M.A.I. 11.02(1) defines "negligent" or "negligence" as "the failure to use that degree of care than an ordinarily careful person would use under the same or similar circumstances."

Philipp and American Family, however failed to raise or preserve this issue at the instruction conference. When objecting to the negligence instruction, Philipp and American Family merely incorporated their objections to the negligent misrepresentation instruction. Specifically, they stated, "[W]e have the same problem with the definition of negligence in this instruction that appears in [the negligent misrepresentation instruction]. So all of the objections that [we] made to that instruction apply also to the definition of [negligence.]" Rule 70.03, however, requires counsel to make "specific objections to instructions considered erroneous." Philipp's and American Family's objection to the negligent misrepresentation instruction involved the definition of "ordinary care" not negligence. At no point did Philipp or American Family assert on the

9. In the argument portion of their brief, Philipp and American Family also complain that the circuit court erred in giving the negligent misrepresentation instruction because the evidence did not support a finding of a heightened standard of care and because the addition of the phrase "in defendants' business" to the definition of "ordinary care" misled, misdirected, and confused the jury in that it improperly lumped together Philipp and American Family and created unnecessary confusion about Philipp's own corporation. These contentions, however, were not raised in Philipp's and American Family's point re-

lied on in their brief on appeal. Philipp and American Family merely complained that the "instruction prejudicially misstated Missouri law in that it modified the M.A.I. definition of 'ordinary care' to impose an impermissibly higher *standard of care on defendants.*" "[A]n argument not set out in the point relied on but merely referred to in the argument portion of the brief does not comply with the requirements of Rule 84.04[] and the point is considered abandoned in this [c]ourt." *Brizendine v. Conrad*, 71 S.W.3d 587, 593 (Mo. banc 2002).

record that M.A.I. 11.02(1) should be used for the definition of negligence. "Where an alleged error on appeal relating to an instruction differs from the objections made to the trial court, the error may not be reviewed on appeal." *Giddens v. Kansas City S. Ry. Co.*, 29 S.W.3d 813, 823 (Mo. banc 2000), *cert. denied*, 532 U.S. 990, 121 S.Ct. 1644, 149 L.Ed.2d 502 (2001).

█ Moreover, as we noted previously, "insurance agents are held to a professional standard of care." *Jones*, 108 S.W.3d at 207. An insurance professional must be judged by the standard of care of those in the insurance field and not of an ordinary person. The instruction, therefore, did not impose on Philipp and American Family a standard of care higher than that required by law.

We, therefore, affirm the circuit court's judgment. The circuit court did not err in overruling Philipp's and American Family's motions for directed verdict and for judgment notwithstanding the verdict. Richey made a submissible case on his claims for negligent misrepresentation and for negligence. The circuit court also did not err in instructing the jury in its verdict directing instructions using a professional standard of care.

All concur.